WILDFLOWER COMMUNITY ASSOCIATION, INC., a not for profit Corporation of the State of Missouri, Respondent,

v.

Sid and Marcia RINDERKNECHT and Rinderknecht, Ltd., Appellant.

No. WD 55705.

Missouri Court of Appeals, Western District.

May 2, 2000.

Ronald F. Fisk, Nevada, for appellant.

Kendall R. Vickers, Nevada, for respondent.

Before BRECKENRIDGE, C.J., ULRICH and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

Sid and Marcia Rinderknecht and Rinderknecht, Ltd., appeal from the trial court's judgment ordering them to remove a driveway they built over a common area owned by the Wildflower Community Association, Inc. (Association), in the Spring Beauty Addition to the Wildflower Subdivision at Lake Thunderhead. The judgment also orders the Rinderknechts to restore the common area to the condition it was prior to construction of the driveway.

Finally, the judgment enjoins them from constructing or maintaining a roadway of any type from the public road to their property that crosses over the common area. On appeal, the Rinderknechts argue that the judgment is against the weight of the evidence and the trial court erroneously interpreted the covenants and easements to require permission to build on a common area. Because a member of the Association must have permission to build on a common area, and the trial court's finding that the Rinderknechts did not have permission to build their driveway over a common area was not against the weight of the evidence, the judgment of the trial court is affirmed.

### Facts and Procedural Background

The Wildflower Subdivision is located in Putnam County, Missouri. On July 17, 1982, Marcia Rinderknecht bought Lot 256 in the Spring Beauty Addition to the Wildflower Subdivision. On June 1, 1989, Rinderknecht, Ltd., purchased Lot 255 of the Spring Beauty Addition. The purchased lots are subject to the "Second Amended Restated Declarations of Restrictions, Covenants and Easements" (Declaration) declared by the Wildflower Community Association and recorded in the Putnam County Recorder of Deeds Office. The Wildflower Community Association owns common areas that are subject to restrictions stated in the Declaration. One such common area is Common Area No. 1, which abuts Lots 255 and 256. Common Area No. 1 is a "vegetative area" between Wildflower Drive and Lots 255 and 256. In addition to common areas, the Spring Beauty Addition includes roads owned by the Wildflower Community Association that are dedicated for public use.

On July 5, 1996, the Rinderknechts requested permission from the Wildflower Architectural and Environmental Control Committee (Committee) to construct a residence on their lots in the subdivision. The Committee used a building permit form to obtain the required information

from the homeowner and to record its approval of the construction plan. The form included a line for describing proposed associated structures, such as driveways or garages. The form also allowed for the attachment of floor plans, lot layouts, or other documents demonstrating the proposed work. When filling out their proposed building permit, the Rinderknechts did not list a driveway as an associated structure, although they did include a proposed garage. Attached to their permit was a lot layout, which included a proposed driveway that passed over Common Area No. 1 connecting their lots to Wildflower Drive. Also on July 5, 1996, the Rinderknechts sent a letter to the Wildflower Community Association Board of Directors (Board) requesting permission to build the driveway across the common area or, alternatively, to purchase the common area abutting their lots. On July 7, 1996, the Committee approved the building permit submitted by the Rinderknechts. At the Wildflower Community Association Board meeting held July 12, 1996, the Board denied the Rinderknechts' request to construct a driveway across the common area.

On August 9, 1996, and again on November 3, 1996, the Rinderknechts met with the Board regarding the driveway. The Board did not approve the request to build the driveway across the easement, nor did it agree to sell the common area to the Rinderknechts. In a letter dated September 8, 1996, the Committee requested that the Rinderknechts resubmit the lot layout without the driveway. The Rinderknechts complied. However, sometime in April of 1997, the Rinderknechts began construction and use of a driveway over Common Area No. 1, which connected their property to the public road, Wildflower Drive.

On April 29, 1997, the Wildflower Community Association filed suit against the Rinderknechts asking that the court issue an injunction preventing the Rinderknechts from using, maintaining or constructing the driveway over Common Area

No. 1. On May 16, 1997, the Committee wrote a letter to the Rinderknechts stating that it did not intend to grant them permission to build a driveway, that the Committee did not have the authority to grant such permission, and that if the Rinderknechts had understood the building permit to include permission to build the driveway over the common area, the Committee was thereby revoking any such permission.

The case was tried before the court in equity. On December 17, 1997, the trial court issued its judgment concluding that the Committee did not grant the Rinderknechts permission to construct the driveway. In its conclusions of law, the trial court found that the Wildflower Community Association owned Common Area No. 1, that the Rinderknechts had a right to the use and enjoyment of that area, but not a greater right than the other owners and members of the Wildflower Community Association. The court further found that building a driveway over the common area was a breach of the covenants and restrictions imposed on the parcels of land and, finally, that "[e]ven if it is believed a committee granted some permission for this construction and maintenance, it was without authority and permission to do so and such permission would be invalid." Therefore, the court ordered the Rinderknechts to remove the driveway and permanently enjoined them from using the common area for a driveway.

The Rinderknechts subsequently filed a motion for a new trial, which was denied by the trial court. In its order denying the Rinderknechts' request for a new trial, the court stated, "It is the court's belief that the intent of the dedicated common areas are for the benefit of all property owners and that parceling out portions to the sole benefit of individual owners defeats the generally accepted philosophy of common areas." The Rinderknechts filed this appeal.

## Standard of Review

Appellate review of a court-tried civil case is governed by *Murphy v. Carron,*

536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court must be affirmed unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Id.* at 32. This court defers to the trial court's factual findings, as the trial court is in a superior position to determine the credibility of witnesses. *Custom Muffler and Shocks, Inc. v. Gordon Partnership*, 3 S.W.3d 811, 817 (Mo.App. 1999). The evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded. *Lance v. Lance*, 979 S.W.2d 245, 248 (Mo.App.1998).

## Points on Appeal

On appeal, the Rinderknechts first argue that the trial court's finding that the Committee did not grant them permission to build the driveway was against the weight of the evidence. In their second point, the Rinderknechts claim that the trial court misconstrued the law when it ruled that building a driveway over the common area was a violation of the Declaration. In resolving these claims of error, this court must determine (1) whether the Declaration authorizes an owner to construct a structure on a common area and, if so, under what conditions, and (2) whether the weight of the evidence compels a finding that the Rinderknechts met those conditions. These issues will be determined in this order, rather than in the order of the Rinderknechts' points relied on.

## Declaration Authorizes Member to Construct an Associated Structure on Common Area with Permission

■ The Rinderknechts claim that the trial court erred in its construction of the covenants and restrictions in the Declaration. The Rinderknechts argue that the Declaration grants every member of the Wildflower Community Association "a right and easement of use and enjoyment in and to the common areas and common facilities," subject to certain restrictions. Under the Rinderknechts' interpretation of the covenants, building the driveway over the common area would not be a violation of the Declaration.

■ The Declaration is a restrictive covenant between the Developer, the Association, and its members. *Kling v. Taylor–Morley, Inc.*, 929 S.W.2d 816, 819 (Mo. App.1996). "[A] restrictive covenant is a private contractual obligation generally governed by the same rules of construction applicable to any covenant or contract." *Id.* Contract construction is a question of law and is reviewed *de novo* by this court. *McGilley v. McGilley*, 951 S.W.2d 632, 636 (Mo.App.1997). The purpose of contract construction is to ascertain the intent of the parties and to give effect to that intent. *Dwyer v. Unit Power, Inc.*, 965 S.W.2d 301, 307 (Mo.App.1998). "[C]ourts should interpret covenants so as to give effect to the intent expressed by the plain language." *Parkton Ass'n v. Armstrong*, 878 S.W.2d 50, 53 (Mo.App.1994).

■ Unless the contractual provisions are ambiguous, the contract language alone is used to determine the parties' intent. *Dwyer*, 965 S.W.2d at 307. To ascertain the intent of the parties, this court must give the words of the contract their "natural, ordinary, and common sense meaning." *Wilshire Const. Co. v. Union Elec. Co.*, 463 S.W.2d 903, 906 (Mo. banc 1971). The court must look at the entire Declaration and consider the purpose and nature of the contract. *Central City Ltd. Part. v. United Post. Sav.*, 903 S.W.2d 179, 182 (Mo.App.1995). Each provision is construed in harmony with the others to give each provision a reasonable meaning and avoid an interpretation that renders some provisions useless or redundant. *AJM Packaging Corp. v. Crossland Const. Co., Inc.*, 962 S.W.2d 906, 912 (Mo. App.1998).

Looking at the entire Declaration, this court notes that the Declaration includes a statement of its purpose. The purpose clause states:

> The restrictions, covenants and easements contained in this declaration are imposed to promote the quality of life at the Community by establishing standards for development and use of the property in the community, preserving scenic beauty, protecting environmental and ecological values, providing for the operation and use of facilities and utilities, safeguarding the enjoyment of the Community lands and amenities, and by creating an organization through which these things can be accomplished and which will enable the entire community to be developed into a harmonious and integrated whole.

The Declaration recognizes that there are common areas that are owned by the Association. The Declaration defines "commons" as "a separate piece of land as shown on the plats of the several additions of the Community and identified as such." "Common areas" are defined in the Declaration as:

> [A]ll commons, association roads and all other lands in the Community which are not shown on the plats of the several additions as part of any restricted commons, residential lot, commercial lot, multi-family lot, residential condominium lot, commercial condominium lot, residential condominium area, commercial condominium area, utility area, or restricted road. . . .

The use of these common areas by members of the Association is governed by subparagraph A of Section VI, which is titled "Use of Association owned Property and Facilities." This subparagraph provides as follows:

> *Use of Common Area and Common Facilities.* Every member shall have a right and easement to use and enjoyment in and to the common areas and common facilities subject to the following provisions and limitations[.]

The Rinderknechts assert that the general language contained in this subparagraph authorizes them to construct a driveway upon the common area between their lots and Wildflower Drive. The trial court rejected this argument and ruled that, as a matter of law, the Rinderknechts have no greater right to the common area than any other member of Wildflower, and the construction of the driveway would be a violation of the covenants contained in the Declaration.

While the Rinderknechts rely upon the general language concerning the use of Association property as authority for them to construct a driveway on the common area, there are two provisions that specifically address the construction of structures upon common areas by members. Within Section III, the definition section, "associated structure" is defined as follows:

> "Associated structure" shall mean any building (including but not limited to dwelling buildings, commercial buildings, recreational buildings, garages, storage buildings, play houses, gazebos, and the like) fence, dock, pier, retaining wall, drive way, drainage system, or similar structural improvement, including any additions, extensions, or modifications thereto, placed or built on any residential lot, multi-family lot, commercial lot, residential condominium lot or commercial condominium lot, *"Associated structure" shall also mean structural improvements placed or built by members on common areas or restricted commons,* including the body and bed of Lake Thunderhead, *with the consent of the Developer, the Association, or the Committee.*

(Emphasis added). There is another provision, found within the provisions and limitations in subparagraph 7 of Section VI, which provides that "[a]n associated structure constructed on the common areas . . . by a member with the consent of the Developer, the Association, or the Committee shall be for the exclusive use and enjoy-

ment of such members." The plain and ordinary meaning of the language in these sections clearly indicates that the parties to the Declaration intended that members be permitted to build associated structures on common areas.

The right of a member to build an associated structure upon a common area as granted by these provisions is not absolute, however. Both references to members building on common areas include the language "with the consent of the Developer, the Association, or the Committee." These provisions evidence the intent of the parties that a member can build on a common area only when the member has been granted permission to do so, and this permission can be granted by the Developer, the Association or the Committee.

■ When considered in its entirety, the Declaration supports this interpretation. The Declaration includes the requirement that a member must have the approval of the Committee before constructing an associated structure on the member's own property. It is unreasonable to believe the parties to the Declaration intended to make building on one's own property more restricted than building on the Association's property. When interpreting contracts, this court "attempt[s] to avoid absurd results." *CIT Group/Equip. v. Integrated Fin. Serv.*, 910 S.W.2d 722, 732 (Mo.App.1995).

Applying the canons of contract construction to the Declaration, it is evident that the intent of the parties was not to grant members an unlimited right to build upon the common areas. The Declaration restricts the members' right to build upon the common areas by requiring that the building be approved by the Developer, the Association or the Committee. The Rinderknechts, therefore, do not have an unrestricted right to build a driveway over the common area between their lots and Wildflower Drive.

### A Finding that the Rinderknechts Did Not Have Permission Is Not Against the Weight of the Evidence

■ To lawfully construct their driveway over the common area, the Rinderknechts must have the consent of the Developer, the Association or the Committee. The Rinderknechts do not assert that the Developer or the Association, through its Board, consented to their construction of a driveway over the common area. Instead, they argue that the Committee granted them permission to build the driveway when it approved their building permit, and the trial court's conclusion that it did not was against the weight of the evidence.

■ " 'Weight of the evidence' means its weight in probative value, not its quantity. . . . The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App. 1991) (internal citation omitted). The power to set aside a decree or judgment because it is "against the weight of the evidence" should be exercised only "with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32. "We defer to the trial court as the finder of fact in our determination as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence." *Venture Stores, Inc. v. Pacific Beach Co., Inc.*, 980 S.W.2d 176, 180 (Mo. App.1998).

The fact in issue, here, is whether the Committee approved the building of the driveway over the common area. The Declaration requires that a homeowner seeking the Committee's approval to build an associated structure must provide the information required by the Committee, but the procedure for doing so is informal. The homeowner must complete a building permit form and obtain the approval of at least three members of the Committee. The homeowner may attach to the permit

form any floor plans, lot layouts or other documents that inform the Committee about the work to be done.

■ While the building permit is evidence to be considered in determining whether the Committee approved the building of the driveway, the permit is essentially a written recording of each Committee member's approval. "'Writings of this . . . sort may be said merely to happen to record the facts of essentially nonwritten transactions'" and oral evidence based on personal knowledge may be introduced as primary evidence even if the writing "would provide some of the same information." *Cooley v. Director of Revenue, State of Mo.*, 896 S.W.2d 468, 470–71 (Mo. banc 1995) (quoting McCORMICK ON EVIDENCE § 233 (4th ed.1992)). Therefore, in determining whether there is substantial evidence to support the trial court's judgment, this court will consider both the written and oral evidence on the issue of the Committee's approval or disapproval of the building of the driveway.

The evidence at trial showed that on July 5, 1996, the Rinderknechts circulated a completed building permit application to three Committee members to obtain their approval. On the permit application itself, the Rinderknechts did not list the proposed driveway as an associated structure, but did list a proposed garage. Attached to the permit was a proposed lot layout that did include the driveway. Because the permit form does not list the driveway as a proposed associated structure and the lot layout does, an inspection of the building permit does not establish whether the Committee approved the building of the proposed driveway.

The oral evidence showed that the Rinderknechts met individually with three members of the Committee, resulting in the Committee granting its approval of the building permit on July 7, 1996. At trial, these three Committee members, Linda Buttgen, George Jordan, and Marion Coughennower, testified regarding the alleged Committee approval of the proposed driveway. Ms. Buttgen testified that she approved construction of the items listed on the face of the permit itself. She stated that the permit did not mention the driveway and she would not have approved a driveway from Wildflower Drive across the commons to the Rinderknechts' lots. Mr. Jordan testified that he had no recollection as to whether the lot layout was attached to the building permit when he approved it or whether the Rinderknechts were asking for permission to put in a driveway over the common area. While he would have approved a driveway to their lot from Wildflower Drive, since it was not clear that a common area was in between the lots and the road, he believed that only the Board could approve construction upon a common area. Finally, Mr. Coughennower testified that he approved construction of the items listed on the building permit. While he did not recall seeing the attached lot layout, he knew the Rinderknechts were seeking approval to build a driveway over the common area. He approved the Rinderknechts' construction of a driveway over the common area to give them better access to their lots, but he also believed that the Rinderknechts had to obtain the Board's permission for the driveway. After considering this evidence, the court ruled that the Committee did not approve the driveway.

The testimony of two of the three Committee members who signed the building permit was that they did not intend to approve the building of a driveway over a common area. From this evidence, the trial court could have reasonably believed that the Committee did not grant the Rinderknechts permission to build the driveway. The trial court's finding that the Committee did not approve the driveway is supported by competent substantial evidence from the record as a whole, and is not against the weight of the evidence. This court is not firmly convinced that the trial court's decision is wrong. *See Murphy*, 536 S.W.2d at 32.

The judgment of the trial court is affirmed.

All concur.