**BARRY HARBOR HOMES ASSOCIATION,**
Appellant,

v.

**Benjamin ORTEGA and Carolyn Ortega, Respondents.**

**No. WD 61435.**

Missouri Court of Appeals, Western District.

May 30, 2003.

Michael P. Keleher, Gladstone, MO, for appellant.

Michael R. Bredehoft, Liberty, MO, for respondents.

Before ELLIS, C.J., BRECKENRIDGE and EDWIN H. SMITH, JJ.

PATRICIA BRECKENRIDGE, Judge.

Barry Harbor Homes Association appeals the trial court's grant of summary judgment in favor of Benjamin and Carolyn Ortega on its petition to enjoin the Ortegas from parking a boat on their driveway in violation of a restrictive covenant. In its sole point on appeal, the Association claims that the trial court erred in granting summary judgment for the Ortegas because it misapplied the law

in interpreting the restrictive covenant in that it "narrowly construed the definition of a single word in the declaration of protective covenants and failed to ascertain the overall intent of the covenantor." This court finds that the trial court did not misapply the law in interpreting the restrictive covenant. Accordingly, the judgment of the trial court is affirmed.

## Factual and Procedural Background

■ When reviewing summary judgments, this court reviews the record, and any reasonable inferences from the record, "in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Association is a Missouri not-for-profit corporation, which oversees the Barry Harbor Subdivision in Kansas City. The Ortegas live in the Barry Harbor Subdivision. All of the property within the Barry Harbor Subdivision, including the Ortegas' property, is subject to a Declaration of Protective Covenants of Barry Harbor. Paragraph 10 [1] of the Declaration of Protective Covenants provides that "[n]o truck, boat, trailer, camper, recreational vehicle, machinery or other equipment shall be repaired or customarily or habitually parked, kept or stored on the streets or alleys or in the yards around any of the buildings within Barry Harbor."

During the summer months, the Ortegas parked their boat in the driveway of their home on a continuous basis. On June 5, 2001, the Association filed a petition in the Circuit Court of Platte County, asking the court to permanently enjoin the Ortegas "from customarily or habitually parking, keeping or storing their boat on their property." The Association claimed that by parking their boat in their driveway, the Ortegas were violating Paragraph 10 of the Declaration of Protective Covenants.

In response to the Association's petition, the Ortegas filed a motion for summary judgment. In their motion, the Ortegas argued, *inter alia*, that they were not violating Paragraph 10 of the Declaration of Protective Covenants because Paragraph 10 "does not specifically say that the boat may not be parked in the [Ortegas'] driveway." Instead, the restriction only prohibits the parking of boats "on the streets or alleys or in the yards around any of the buildings within Barry Harbor."

In response to the Ortegas' motion for summary judgment, the Association asserted that Paragraph 10 prevents the Ortegas' from parking a boat in their driveway because the plain and ordinary definition of the word "yard" as used in Paragraph 10 includes a driveway. To support this definition of the word "yard," the Association quoted portions of the definition of "yard" found in Black's Law Dictionary, which defined "yard" as "[a] piece of land inclosed for the use and accommodation of the inhabitants of a house," and portions of the definition found in Webster's Dictionary, which defined "yard" as "[a] tract of ground next to, surrounding or surrounded by a building or group of buildings[;][a] tract of ground, often enclosed, used for a specific business or activity." The Association further "suggest[ed] that the clear intent of the drafter of the Covenant was to prohibit the customary and habitual parking of a boat

---

1. In its petition, the Association called this restriction "Paragraph 9." The Ortegas and the trial court, however, referred to this restriction as "restriction number 10." In addition, the Association cites to this restriction as "paragraph 10" in its appellant's brief. As the entire Declaration of Protective Covenants was not made part of the record on appeal, this court will assume that this restriction is Paragraph 10.

anywhere around a residence in the subdivision."

After hearing the parties' arguments, the trial court granted the Ortegas' motion for summary judgment on April 18, 2002. The trial court found that the Association "seeks to enjoin [the Ortegas] from habitually parking, keeping, or storing a boat on the driveway serving [their] residence." The court also found that the restriction in Paragraph 10 "does not mention nor include the term 'driveway.'" The trial court noted that Webster's Unabridged Second Edition Dictionary defines "driveway" as "a road esp. a private one, leading from a street or other thoroughfare to a building, house[,]" and defines "yard" as "the ground that immediately joins or surrounds a house[.]" The court then

> [J]udicially notice[d] that the customary uses of these two words in everyday conversations by ordinary people differentiates 'driveways' and 'yards.' Common usage recognizes the difference; one you mow, trim, rake, fertilize and weed; the other you patch, seal, repair, sweep and shovel, all the foregoing depending on the season and time of year.

The court further held that "[w]hile a 'yard' or a 'driveway' are a part of a home owner's realty, by common usage and custom they are recognizably different." Therefore, the court granted the Ortegas' motion for summary judgment because "there is no protective covenant that prevents [the Ortegas] from parking, keeping, or storing their boat in their driveway." This appeal followed.

## Standard of Review

 Appellate review of a summary judgment is essentially *de novo*. *ITT*, 854 S.W.2d at 376. This court's criteria for ascertaining the propriety of summary judgment are the same as those which a trial court uses initially. *Id.* This court

does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* The moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378. A defending party may establish a right to judgment as a matter of law by showing:

> (1) [F]acts that negate *any one* of the claimant's elements facts, (2) that the nonmovant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

## No Misapplication of Law in Interpreting Restrictive Covenant

In its sole point on appeal, the Association claims that the trial court erred in granting summary judgment for the Ortegas because it misapplied the law in interpreting the restrictive covenant. Specifically, it asserts that the trial court "narrowly construed the definition of a single word in the declaration of protective covenants and failed to ascertain the overall intent of the covenantor."

 When construing a restrictive covenant, this court generally applies "'the same rules of construction applicable to any covenant or contract.'" *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App.2000) (quoting *Kling v. Taylor–Morley, Inc.*, 929 S.W.2d 816, 819 (Mo.App.1996)). The basic con-

cepts this court applies when construing a restrictive covenant are:

1. The terms used will be given their ordinary and popular meaning and if the language is plain, no construction is necessary.

2. When the meaning of the terms is open to construction, they will be strictly construed.

3. The restrictions will not be extended by implication.

4. Any reasonable doubt will be resolved in favor of the free use of land.

*Lake St. Louis Cmty. Ass'n v. Leidy,* 672 S.W.2d 381, 382 (Mo.App.1984). " 'The prime rule of construction is that when there is no ambiguity in the language used, then there is no room for construction' " and, thus, " '[t]he plain every day meaning of the language of the contract governs.' " *Barnes v. Anchor Temple Ass'n,* 369 S.W.2d 893, 898 (Mo.App.1963) (quoting *Porter v. Johnson,* 232 Mo.App. 1150, 115 S.W.2d 529, 533 (1938)). If the language of the restrictive covenant is ambiguous and open to interpretation, however, the purpose of the construction is "to ascertain the intent of the parties and to give effect to that intent." *Wildflower Cmty. Ass'n, Inc.,* 25 S.W.3d at 534. This court's review of restrictive covenant construction is *de novo. Id.*

The restrictive covenant at issue in this case is Paragraph 10 of the Declaration of Protective Covenants of Barry Harbor, which provides that "[n]o truck, boat, trailer, camper, recreational vehicle, machinery or other equipment shall be repaired or customarily or habitually parked, kept or stored on the streets or alleys or in the yards around any of the buildings within Barry Harbor." While both parties agree that Paragraph 10 does not explicitly include the word "driveway," they dispute over whether the definition of the word "yard" as used in Paragraph 10 includes a

driveway. The Association claims that the definition of the word "yard" includes a driveway, and thereby precludes the Ortegas from habitually parking their boat in their driveway. The Ortegas, on the other hand, claim that the word "yard" does not include a driveway, and, thus, they can habitually park their boat in their driveway without violating Paragraph 10.

■ To decide whether the covenant prevents the Ortegas from habitually parking their boat in their driveway, this court must determine the intent of the Association in using the term "yard." *Id.* The intent is evident from the " 'natural, ordinary, and common sense meaning' " of the words used in the restrictive covenant. *Id.* (quoting *Wilshire Const. Co. v. Union Elec. Co.,* 463 S.W.2d 903, 906 (Mo. banc 1971)). The plain and ordinary meaning of the word "yard" is a grassy area, often with shrubbery and flowers, surrounding a house. Additionally, the ordinary maintenance of a "yard" usually includes, as the trial court noted, mowing, raking, weeding, and fertilizing. In contrast, ordinary people do not think of a driveway as surrounding a house, but instead think of it as extending from the house to the street. In addition, a driveway is usually made of concrete or gravel, not grass, shrubbery, and flowers. A driveway is customarily thought of as an area for pulling in and out of the garage or parking cars. Finally, the maintenance of a "driveway," which ordinarily includes patching, sealing, sweeping, and shoveling, is also different from the maintenance of a "yard." This plain and ordinary meaning of the term "yard," which does not include a "driveway," has been recognized in many Missouri cases. *See, e.g., State v. Goodwin,* 43 S.W.3d 805, 810 (Mo. banc 2001) (equating the word "yard" with the word "lawn"); *Post Hill Homeowners Ass'n v. Kennell,* 39 S.W.3d 508, 513 (Mo.App.2000) (recognizing a

"yard" and a "driveway" as two distinct areas); *Maryland Estates Homeowners' Ass'n v. Puckett,* 936 S.W.2d 218, 219 (Mo. App.1996) (describing restrictive covenant that prohibits the parking of trucks in "yards" and "driveways"); *Erkson by Hickman v. Sears, Roebuck & Co.,* 841 S.W.2d 207, 208 (Mo.App.1992) (describing a "yard" as "border[ing]" a "driveway").

■ Therefore, this court holds that the word "yard" as used in Paragraph 10 of the Declaration of Protective Covenants is unambiguous and this court finds that its plain and ordinary meaning does not include a driveway. "Unless the contractual provisions are ambiguous, the contract language alone is used to determine the parties' intent." *Wildflower Cmty. Ass'n, Inc.,* 25 S.W.3d at 534. Under this rule of construction, although Paragraph 10 prevents homeowners from parking their boats in their yards, it does not prevent them from parking their boats in their driveways. The Ortegas did not violate Paragraph 10 by parking their boat in their driveway, and the trial court did not err in granting summary judgment for the Ortegas.

On appeal, the Association argues for the first time that the trial court misapplied the law in interpreting the restrictive covenant because the word "yard" as used in the restrictive covenant is ambiguous. The Association asserts that the word "yard" is ambiguous because while the Ortegas and the trial court defined "yard" narrowly as "a stretch of grass covered land kept closely cut," it defines "yard" broadly as "[a] piece of land inclosed for the use and accommodation of the inhabitants of the house." Because the word "yard" is ambiguous, the Association contends that the trial court must interpret it according to the principles of judicial construction, the foremost being that "the intention of the restrictor as shown by the

written instrument governs." *Jones v. Haines, Hodges & Jones Bldg. & Dev. Co.,* 371 S.W.2d 342, 343 (Mo.App.1963).

■ Contrary to the Association's assertion, however, the trial court did not misapply the law in interpreting the restrictive covenant. Although the Association and the Ortegas dispute the definition of the word "yard," "[a] provision [in a restrictive covenant] is not ambiguous merely because the parties disagree over its meaning." *Sonoma Mgmt. Co. v. Boessen,* 70 S.W.3d 475, 479 (Mo.App.2002). Moreover, even if this court were to accept the Association's argument that the covenant was ambiguous, "the established principle of contract law [is] that any ambiguity in a written instrument should be construed against the party which drafted the ambiguous language." *Disabled Veterans Trust v. Porterfield Constr., Inc.,* 996 S.W.2d 548, 552 (Mo.App.1999). In addition, restrictions are to be strictly construed, are not to be extended by implication, and are to be interpreted in favor of the free use of land. *Lake St. Louis Cmty. Ass'n,* 672 S.W.2d at 382. To strictly construe the covenant against the Association and in favor of the free use of land, this court must accept the narrower of the two definitions of "yard," i.e., "a stretch of grass covered land kept closely cut." As this definition of "yard" clearly does not include a driveway, under the rules of construction, this court could not extend the restriction in Paragraph 10 to include a driveway. Thus, Paragraph 10 still would not prevent the Ortegas from habitually parking their boat in their driveway.

■ Furthermore, even if this court were to decide that the word "yard" was ambiguous such that it could look at the intent of the drafters to interpret the restrictive covenant, the Association still would not prevail. The Association claims

that its intent as covenantor "was and is to ensure no boat, trailer, recreational vehicle, camper, machinery or other equipment is habitually parked in or around any portion of the open space surrounding a residence located within the Barry Harbor subdivision." The Association admitted at oral arguments that the only sentence in the restrictive covenant that shows this intent is Paragraph 10. Paragraph 10, however, does not show an intent to prevent the habitual parking, storing, or repairing of trucks, boats, trailers, campers, recreational vehicles, machinery, or other equipment in "any portion of the open space" surrounding the homes in the Barry Harbor subdivision. Instead, the plain language of Paragraph 10 shows only an intent to prohibit the habitual parking, storing, or repairing of these items in three specific areas: the streets, the alleys, and the yards. "It is well established that courts should interpret covenants so as to give effect to the intent expressed by the plain language." *Parkton Ass'n v. Armstrong*, 878 S.W.2d 50, 53 (Mo.App. 1994). Further, in response to the Ortegas' motion for summary judgment, the Association did not include any other parol evidence to show its intention to prevent the habitual parking of boats anywhere in the Barry Harbor subdivision. As such, Paragraph 10 still would not disallow the Ortegas from habitually parking their boat in their driveway.

The judgment of the trial court is affirmed.

All concur.

