

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| CLIFTON MERRITT AND TAMMY MERRITT, | ) | No. ED111983 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| vs. | ) | 21CG-CC00181 |
| | ) | |
| KENNETH WILSON AND KAREN WILSON, | ) | Honorable Benjamin F. Lewis |
| | ) | |
| Respondents. | ) | Filed: August 20, 2024 |

John P. Torbitzky, P.J., Michael S. Wright, J., and James M. Dowd, J.

### OPINION

This appeal of a summary judgment arises from a dispute between neighbors in a Cape Girardeau subdivision – Clifton and Tammy Merritt on the one hand and Kenneth and Karen Wilson on the other – regarding an appurtenant easement that stretched from the Wilsons' lot across the Merritts' lot and which the Wilsons used to access the back of their property. In September 2020, Kenneth Wilson and Clifton Merritt discussed a possible transaction whereby the Wilsons would give up the easement in exchange for the Merritts transferring a portion of their lot to the Wilsons. The Merritts claim the parties at that time reached an oral agreement that: (1) the Merritts would transfer a piece of their property to the Wilsons in exchange for $3,500, (2) the parties would split the cost of a survey needed to identify that property, and (3)

the Wilsons would give up their rights to the easement over the Merritts' lot. The Wilsons deny they reached such an agreement.

Then, between December 2020 and February 2021, Wilson and Merritt engaged via email in further discussions regarding the deal which included such issues as the price for the Merritts' property, whether they would split the survey fee, whether they would pay their own attorney's fees, whether Wilson would still be allowed to use the easement for emergencies, and whether either party would be permitted to occasionally block access to the easement. In these discussions, the parties were consistently in accord that they would split the survey cost (until Wilson on December 15 offered to pay the entire survey cost) and pay their own attorney's fees. The parties differed, however, on whether the Wilsons were agreeing to relinquish all rights to use the easement including during emergencies and while the parties negotiated this deal but before reaching an agreement. Nevertheless, the Merritts claim an agreement was reached as a result of these email communications. Again, the Wilsons disagree.

So, in March 2023, the Merritts filed their petition to enforce the oral agreement they claim arose in September 2020 and, alternatively, sought specific performance of a written agreement they claim was reached in February 2021 via email. The Wilsons moved for summary judgment alleging that there was no contract to enforce, oral or written, because no meeting of the minds occurred and also that the statute of frauds barred the claimed oral contract. The trial court granted summary judgment without explanation.

The Merritts now appeal asserting that (1) with regard to their oral agreement claim, the statute of frauds is not applicable because the Merritts performed under the agreement and now seek specific performance and, thus, the matter should proceed to trial for the fact finder to determine whether the parties reached an oral agreement in September 2020, and (2) as for the

2

written agreement they claim arose in February 2021, the Merritts claim the fact finder should resolve the following genuinely disputed matters: (a) whether Wilson's December 15, 2020 email to Merritt constitutes a valid offer on behalf of the Wilsons and, if so, (b) whether Merritt's February 9, 2021 email constitutes an acceptance by the Merritts of that offer.

We hold that summary judgment is proper here because (1) with respect to the claimed oral agreement in September 2020, the parties failed to reach a meeting of the minds and the statute of frauds would have barred that agreement anyway, and (2) with respect to the claimed written agreement in February 2021, no meeting of the minds occurred because the unequivocal language of the parties' emails demonstrated that the parties continued to engage in mere negotiations.

### Background

The Merritts and the Wilsons live in the Otakhi Hills subdivision in Cape Girardeau, Missouri. The Merritts own Lot 7 and the Wilsons own adjacent Lot 6. The subdivision's original plat created a permanent, express, thirty-feet long easement in favor of the Wilsons' lot which stretched across the Merritts' lot and which the Wilsons used to access the back of their property where their barn and fuel tank were located.

In September 2020, Clifton Merritt approached Kenneth Wilson and proposed an agreement whereby the Wilsons would agree to terminate the easement in return for a piece of the Merritts' 4.05 acre lot. Together the men walked the property and identified the piece of the Merritts' lot they had in mind. Clifton Merritt asserts he then made an oral offer to Wilson that the Merritts would transfer that piece of their lot and split the cost of an $800 survey in exchange for the Wilsons' agreement to pay the Merritts $3,500 and to agree to terminate the easement.

3

The Merritts claim that the Wilsons, through Kenneth Wilson, orally accepted the offer. The Wilsons disagree.

On December 6, 2020, the Merritts refinanced their property to remove any restrictions on their ability to transfer a portion of their lot to the Wilsons. That same day, Clifton Merritt notified Kenneth Wilson via email that the survey describing the property in question was completed. On December 9, Wilson emailed Merritt requesting the following items and information his attorney needed to draft the deed transferring that portion of the Merritts' lot to the Wilsons: the agreed-upon sale price, a partial release from the Merritts' mortgage company, and a copy of the survey. In that same email, Wilson proposed that he would pay fair market value for the Merritts' land (as opposed to $3,500), half the cost of the survey, his own legal fees, and that once their new driveway was completed, the Wilsons would sign a formal agreement that they would only use the easement on an emergency basis and that the easement access road could not be blocked by either party. Wilson also invited Merritt to suggest changes to his proposal.

On December 14, Merritt responded by reminding Wilson of his prior statement that he would agree to pay $3,500 (as opposed to the fair market value) for the Merritts' property. Merritt further noted that Wilson's December 9 proposal was different from their purported original agreement because the Wilsons were now not willing give up *all* their rights to the easement. He concluded by notifying Wilson that he had retained counsel for "whichever way [Wilson decided]" including going to court with their dispute or to the homeowners' association.

The next day, December 15, Wilson emailed an amended proposal whereby the Wilsons would agree to give up *all* rights in the easement in exchange for the Merritts' property, with no

mention of any price, would pay the $800 survey cost and that his attorney would need a partial release from the Merritts' finance company for the new deed.

On February 9, 2021, Merritt emailed Wilson that he would accept the December 15 offer if Wilson paid the whole survey fee and gave up all rights to the easement. Merritt also proposed that the Wilsons immediately cease their use of the easement as the parties continued their efforts to close their agreement. On February 11, Wilson rejected that proposal since the easement was his only access to the back part of his property and he then added a new proposal – that the Merritts give up *their* rights to the easement beyond their property line. Our record shows no further communication between Merritt and Wilson.

On July 6, 2021, the Merritts brought this action and on March 21, 2023, filed their first amended petition in two counts in which they alleged the foregoing claims regarding the claimed oral and written agreements. On April 28, 2023, the Wilsons moved for summary judgment on both counts of the petition which the trial court granted.

This appeal follows.

### Standard of Review

Summary judgment is appropriate when the movant establishes there are no genuine issues of material fact and they are entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993); Rule 74.04(c). A genuine issue of material fact exists when there is competent evidence of two plausible, but contradictory, accounts of essential facts. *Armoneit v. Ezell*, 59 S.W.3d 628, 631 (Mo. App. E.D. 2001). Thus, a defendant is entitled to summary judgment when he shows facts that negate any one of the necessary elements of the plaintiff's claim. *Blackwell Motors, Inc. v. Manheim Services Corporation*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017).

5

We review an appeal challenging the grant of a motion for summary judgment *de novo*. *Day Advertising, Inc. v. Hasty*, 606 S.W.3d 122, 129 (Mo. App. W.D. 2020). Thus, we do not defer to the trial court's order granting summary judgment "because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law." *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 906 (Mo. App. W.D. 2003). "Rather, we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment." *Id.* We view the record in the light most favorable to the nonmoving party and afford that party the benefit of all inferences which may be reasonably drawn from the record. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. S.D. 2007) (citing *ITT Commercial Finance Corp.*, 854 S.W.2d at 376). Moreover, summary judgment is an extreme and drastic remedy, and appellate courts should remain cautious in affirming such judgments. *Boone County v. County Employees' Retirement Fund*, 26 S.W.3d 257, 260 (Mo. App. W.D. 2000).

**Discussion**

I.

In their first point regarding the alleged oral agreement, the Merritts claim that summary judgment in the Wilsons' favor is unwarranted because (1) it is a genuinely disputed matter whether the parties entered into an oral contract in September 2020, and (2) the statute of frauds is inapplicable as a matter of law because the Merritts' claim is for specific performance since the Merritts partially or fully performed their side of the agreement. We are unpersuaded because the Merritts have failed to establish by clear and convincing evidence that an oral contract existed to warrant the application of the specific performance remedy. *Barkho v. Ready*, 523 S.W.3d 37, 43 (Mo. App. W.D. 2017).

6

Section 432.010, Missouri's statute of frauds, requires contracts for the sale of real property or any interest therein to be in writing and signed by the party to be charged with the agreement. "An oral agreement for the sale of real property falls squarely within the [s]tatute of [f]rauds … and will not be enforced at law." *Barkho*, 523 S.W.3d at 43 (quoting *Skaggs v. Dial*, 861 S.W.2d 188, 191 (Mo. App. W.D. 1993)). However, exceptions, such as the specific performance remedy, do exist.

To obtain the equitable remedy of specific performance, a valid contract must exist between the parties to the action. *Keller v. Reich*, 646 S.W.2d 141, 143 (Mo. App. S.D. 1983). The essential terms of an agreement to convey real property are the parties, the subject matter, the promises by both sides, the price, and consideration. *Barkho*, 523 S.W.3d at 44. To warrant specific performance, a contract must not be indefinite, uncertain, or incomplete. *Coale v. Hilles*, 976 S.W.2d 61, 65 (Mo. App. S.D. 1990). "Specific performance is granted sparingly and only when the terms of the oral agreement are proved by *clear and convincing evidence*." *Skaggs*, 861 S.W.2d at 192 (emphasis added).

Furthermore, "equity will decree specific performance where a party has so far acted on a promise that to deny him the benefit of the agreement would be unjust …." *Singh v. Lucky's Travel Center, LLC*, 672 S.W.3d 76, 83 (Mo. App. S.D. 2023). "The court cannot create a contract for the parties." *Id.* Moreover, "[t]he law is clear that a decree for 'specific performance is not a matter of right *even to enforce the terms of a legal and binding contract*.'" *Kopp v. Franks*, 792 S.W.2d 413, 420 (Mo. App. S.D. 1990) (quoting *Zoellner v. Carty*, 585 S.W.2d 289, 291 (Mo. App. W.D. 1979)). Rather, "'it is a matter of grace resting upon basic equities.'" *Id.* (citation omitted).

The Merritts have failed to establish by clear and convincing evidence that in September 2020 the parties entered into an oral contract. Thus, the Merritts are not entitled to invoke the equitable remedy of specific performance and summary judgment is proper.

First, while the Merritts have adduced some evidence – namely through Clifton Merritt's deposition testimony – that in September 2020 the parties reached an agreement on $3,500 as the final price for the Merritts' property, Kenneth Wilson disputed this testimony and Clifton Merritt conceded that as of December 6, 2020, they did not have an agreed-upon final price. Merritt also conceded that at the time he claims they had agreed to the $3,500 price, they had not yet agreed on how to split the cost of the survey. This state of the evidence does not satisfy the Merritts' clear and convincing burden to demonstrate that an oral agreement was reached. *Skaggs*, 861 S.W.2d at 192.

Another flaw in the Merritts' position is the paltry evidence that Karen Wilson authorized her husband to enter into an agreement on her behalf inasmuch as they owned their lot jointly as tenants by the entirety. *Branson Land Co. v. Guilliams*, 926 S.W.2d 524, 527 (Mo. App. S.D. 1996). While Karen Wilson testified she knew her husband was negotiating with Merritt, it is unclear whether she authorized him to do so on her behalf. This undermines an essential term of any agreement – that all parties with an interest in the properties be on board.

Lastly, even if the Merritts had adduced clear and convincing evidence of an oral agreement, the Merritts' actions in obtaining a survey, an appraisal, and the mortgage company's lien waiver, do not warrant the application of the specific performance remedy under the equity principles outlined in *Singh*, 672 S.W.3d at 83. Rather, these actions were merely anticipatory to the performance on the agreement they claim existed and did not put them in a worse position than they were before. *Gegg v. Kiefer*, 655 S.W.2d 834, 839 (Mo. App. E.D. 1983).

8

Lastly, we observe that this case illustrates the purpose of the statute of frauds and the importance of written agreements signed by all parties in interest. Point I is denied.

## II.

In their second point regarding their claim for specific performance on the purported written agreement, the Merritts assert that it is genuinely disputed whether the Merritt's February 9, 2021 email constituted an acceptance of a purported offer Wilson made in the December 15, 2020 email. We again disagree that the parties reached a meeting of the minds.

"A 'meeting of the minds' occurs … when there is a definite offer and *unequivocal* acceptance." *Stickler v. McGinnis*, 649 S.W.3d 38, 44 (Mo. App. W.D. 2022) (citation omitted). "Any acceptance that includes new or variant terms from the offer presented amounts to a counteroffer and a rejection of the original offer." *Pride v. Lewis*, 179 S.W.3d 375, 379 (Mo. App. W.D. 2005). "To determine whether a meeting of the minds occurred and an agreement has been reached, the court looks to the intention of the parties as expressed or manifested in their words or acts." *Karsch v. Carr*, 807 S.W.2d 96, 99 (Mo. App. E.D. 1990). In addition, negotiations, proposals, or preliminary steps do not constitute a contract. *Volker Court, LLC v. Santa Fe Apartments, LLC*, 130 S.W.3d 607, 611 (Mo. App. W.D. 2004).

The two emails in question do not establish a contract. In fact, they indicate the opposite – that the parties had no meeting of the minds. There are several flaws in the Merritts' argument. First, it is uncertain in the context of the parties' extensive back-and-forth whether Wilson's December 15 proposal *erroneously* or *purposefully* excluded a price for the property. His email did not state a price; but the price, whether $3,500 or fair market value, was certainly a key term for the parties. To be capable of being accepted, an offer must be definite in its terms. *Sansone Law, LLC v. J&M Securities, LLC*, 589 S.W.3d 74, 87 (Mo. App. E.D. 2019).

9

Moreover, Merritt's February 9 purported acceptance was not unequivocal because he added a new term, namely, that the Wilsons would cease using the easement during negotiations which, based on the parties' extensive communications, was a material term. *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo. App. E.D. 1994).

While Merritts' purported acceptance was close to being close, that no meeting of the minds occurred was confirmed days later when Wilson rejected Merritts' proposal that the Wilsons immediately cease using the easement and added a new proposal concerning the *Merritts* giving up their use of the easement beyond their property line. In short, these email exchanges demonstrate that Clifton Merritt and Kenneth Wilson unsuccessfully negotiated a deal but never had a "meeting of the minds." Point II is denied.

## Conclusion

For the reasons set forth above, we affirm the trial court's judgment.

_____
James M. Dowd, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.