

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

TABERNACLE COMMUNITY ) 
DEVELOPMENT CORPORATION, ) No. ED112875
)
)
    Respondent, ) Appeal from the Circuit Court
) of the City of St. Louis
vs. ) 2322-CC07313
)
THE METROPOLITAN ST. LOUIS )
SEWER DISTRICT, ) Honorable Jason M. Sengheiser
)
    Appellant. ) Filed: July 22, 2025

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

**Opinion**

This case concerns a Metropolitan St. Louis Sewer District (MSD) lien for unpaid sewer bills which MSD recorded pursuant to one of its ordinances on a residential property on Kossuth Avenue in the City of St. Louis. The question before us is whether that lien somehow survives a sheriff's sale of that property conducted under the Municipal Land Reutilization Law (MLRL), sections 92.700 - 92.930, a statute which purports to extinguish *all* liens, except IRS liens, in an effort to attract new revenue generating, tax producing ownership. Reduced to its brass tacks, the conflict here is between a statute the General Assembly enacted and a local MSD ordinance. We conclude that the MLRL statute prevails over the MSD ordinance.

In its sole point on appeal, MSD argues that its lien ordinance, Wastewater Ordinance No. 15669, supersedes the MLRL because MSD's power to establish user charges through an ordinance emanates from its 1954 origins as a constitutionally-created political subdivision. MSD also claims that quiet title is not the proper legal vehicle to challenge an MSD lien.

Central to MSD's first argument is the MSD Plan of 1954. That same year, the City of St. Louis and parts of St. Louis County adopted the Plan as "the organic law of the territory" which takes "the place of and supersede[s] all laws, charter provisions and ordinances inconsistent therewith." But MSD reads too much into this language. Simply put, while this constitutionally-created Plan may give MSD the authority to enact ordinances, it does not give those ordinances constitutional preeminence.

As for its second argument, MSD failed to raise in the trial court its claim that Tabernacle's quiet title action is the incorrect legal vehicle. Regardless, we find no fault with employing a quiet title action under the circumstances of this case.

## Background

On August 23, 2022, respondent Tabernacle Community Development Corporation purchased the Kossuth Avenue Property at a sale conducted by the St. Louis City Sheriff under the MLRL, section 92.835.2. Ten years earlier, MSD had recorded a lien on the Property pursuant to the MSD Ordinance for the non-payment by the Property's then-owner of MSD's bills for wastewater user fees. On September 19, 2023, Tabernacle filed a petition against MSD to extinguish its lien and quiet title in the Property. Tabernacle moved for summary judgment which the court granted and MSD now appeals.

*MSD*

The current Missouri Constitution, adopted by the people on February 27, 1945, granted to the voters of St. Louis County and St. Louis City the specific authority "to establish a metropolitan district or districts for the functional administration of services common to the area included therein;…" Article VI, §§ 30(a)-(b). In 1954, a majority of voters from the City and from parts of the County adopted the MSD Plan. The Plan gives MSD jurisdiction, control, possession, and supervision of sewer and drainage systems placed in its jurisdiction. Section 3.020(1) of the Plan. MSD is to maintain, operate, reconstruct, and improve said sewer systems and has all the rights, privileges, and jurisdiction necessary to do so including imposing user charges. *Id*. The Plan also gives MSD the power to adopt ordinances. *Id*. at section 3.050.

Wastewater Ordinance No. 15669, which is at the center of our attention here, allows MSD to impose and record liens on real estate for unpaid wastewater user charges. Under the language of the Ordinance, such a lien may be extinguished by payment of the amount due. The Ordinance also creates a regulatory scheme under which a user may challenge the lien. The delinquent user may request review by MSD's finance director within thirty days of receiving the bill or notice of the lien and then may appeal that decision to MSD's executive director. A person aggrieved by a final order may seek judicial review within thirty days of the executive director's decision.

The 2012 owner of the property who incurred these delinquent wastewater user charges is not a party here.

*Tabernacle's Purchase of the Property Pursuant to the MLRL*

In 1971, the Missouri legislature enacted the MLRL, sections 92.700 to 92.920.  Section 92.875.2 describes MLRL's purpose as "returning land which is in a nonrevenue generating nontax producing status, to effective utilization in order to provide housing, new industry, and jobs for the citizens of [St. Louis] operating under the provisions of sections 92.700 to 92.920 and new tax revenues for [St. Louis]."  The MLRL gave the City of St. Louis the option of adopting the MLRL's extensive provisions as the City's means of dealing with the collection of delinquent real estate taxes.  Section 92.700.

In December 1971, the City's legislative body did so and formed the Land Reutilization Authority (LRA) as contemplated by section 92.875.1.  The LRA governs the management, sale, transfer and other disposition of tax delinquent properties.  *Collector of Revenue of City of St. Louis v. Parcels of Land Encumbered with Delinq. Tax Liens Serial Numbers 1-047 & 1-048*, 517 S.W.2d 49, 52 (Mo. 1974).

Ultimately, the MLRL allows the LRA to impose a sheriff's sale of a tax delinquent property in order to collect unpaid taxes and interest owed and to transfer ownership to a taxpaying individual or entity.  Section 92.835.2.  At such a sale, the purchaser acquires title in fee simple and all liens (except IRS liens) are forever extinguished including liens held by "tax districts."  The MLRL specifically includes MSD in its definition of "tax district" in section 92.710 — "the state of Missouri and any city, municipality, school district, road district, water district, *sewer district*, levee district, drainage district, special benefit district, special assessment district, or park district, located within any city operating under the provisions of sections 92.700 to 92.920[.]". (Emphasis added).  In section 92.835.2, the legislature broadly describes the liens (except IRS liens) and any other interests that the sale extinguishes: "… all persons, including

4

the state of Missouri, any taxing authority or tax district as defined herein, judgment creditors, lienholders, minors, incapacitated and disabled persons, and nonresidents who may have had any right, title, interest, claim, or equity of redemption in or to, or lien upon, such lands shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption, and the court shall order immediate possession of such real estate be given to such purchaser."

Upon its August 2022 purchase of the Property, Tabernacle received a Sheriff's deed dated November 10 which it recorded on November 28, 2022.

*Summary Judgment Proceedings*

Tabernacle's motion for summary judgment repeated its allegation in the petition - that the sheriff's sale extinguished MSD's lien. MSD, for its part, argued that as an entity created under Article VI, §§ 30 (a)-(b) of the Missouri Constitution, its constitutional authority to impose, maintain, and enforce its lien supersedes the MLRL because the MLRL is an inconsistent state law. But the trial court agreed with Tabernacle finding that MSD's interpretation of its Plan would allow it to act effectively as a "super legislature" trumping all contrary laws.

**Standard of Review**

Summary judgment is appropriate when the movant establishes that the material facts are undisputed and they are entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993); Rule 74.04(c). A genuine issue of material fact exists when there is competent evidence of two plausible, but contradictory, accounts of essential facts. *Armoneit v. Ezell*, 59 S.W.3d 628, 631 (Mo. App. E.D. 2001). Thus, a defendant is entitled to summary judgment when he shows undisputed facts that

negate any one of the necessary elements of the plaintiff's claim. *Blackwell Motors, Inc. v. Manheim Services Corp.*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017).

We review an appeal challenging the grant of a motion for summary judgment *de novo*. Thus, we do not defer to the trial court's order granting summary judgment "because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law." *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 906 (Mo. App. W.D. 2003). "Rather, we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment." *Id*.

We view the record in the light most favorable to the nonmoving party and afford that party the benefit of all inferences which may be reasonably drawn from the record. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. S.D. 2007) (citing *ITT Commercial Finance Corp.*, 854 S.W.2d at 376)). Moreover, summary judgment is an extreme and drastic remedy, and appellate courts should remain cautious in affirming such judgments. *Clark v. SSM Healthcare St. Louis*, 666 S.W.3d 210, 214 (Mo. App. E.D. 2023) (citing *Boone County v. Boone County Employees' Retirement Fund*, 26 S.W.3d 257, 260 (Mo. App. W.D. 2000)).

**Analysis**

*The MLRL's Statutory Authority Overrides the Ordinance and Extinguishes MSD's Lien*

Pruned to its core, MSD's argument is that its constitutional origins imbue both its Plan and its ordinances with such constitutional heft that not even the Missouri General Assembly can impact them and the only check is through MSD's own regulatory scheme. In this regard, MSD seeks to put itself above the Missouri legislature.

Doubtless, Article VI § 30 of the Missouri Constitution sanctioned the City of St. Louis and St. Louis County to cooperate by creating a sewer district to improve drainage and sewage

6

service in their joint jurisdictions. But that does not mean that MSD is a singularly sovereign sewer sector of state government with plenary powers answerable only to the Constitution. Rather, upon closer analysis, MSD has power on par with a municipal government to enact a lien ordinance for unpaid wastewater user charges but such an ordinance is subordinate to state statutes, particularly like the one here that is on point. *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015).

In 1945, Missouri voters ratified Article VI of the Missouri Constitution. Titled "LOCAL GOVERNMENT," Article VI consists of thirty-three provisions about local governments - their creation, organization, and cooperation amongst them. Section 30, titled "CITY AND COUNTY OF ST. LOUIS," governs the relationship between those two entities and outlines their powers to cooperate. This includes the power to form "a metropolitan district or districts for the functional administration of services common to the area included therein" like MSD. An Article VI plan "shall become the organic law of the territory therein defined and shall take the place of and supersede all laws, charter provisions and ordinances inconsistent therewith relating to said territory." Mo. Const. art. VI, § 30(b).

As one of those "metropolitan districts," MSD has the implied power, under its authority to set rates and impose user charges, to also impose liens: "[T]he power to collect and enforce collection of charges from the property served necessarily includes the power to impose a lien for those charges on the property served." *St. Louis Inv. Properties, Inc. v. Metropolitan St. Louis Sewer Dist.*, 873 S.W.2d 303, 307 (Mo. App. E.D. 1994).

Thus, we initially conclude that Article VI, § 30, when viewed in its actual context, confers upon MSD a much narrower set of constitutional powers than the broad powers which MSD claims. Article VI addresses local governments, and Section 30 addresses the powers and

means by which the City and the County may cooperate in areas of commonality like sewers.

That is, MSD's creation reflects the separate local governments of St. Louis City and St. Louis

County creating one political subdivision to deal with one specific issue: the "preservation and

protection of the public health and welfare by drainage and sewage disposal." *State on Inf. Of*

*Dalton v. Metropolitan St. Louis Sewer Dist.*, 275 S.W.2d 225, 230 (Mo. banc 1955).[1]

As an appendage of the City's and the County's governments, MSD has no more power

to carry out its agenda than any other local government. Moreover, Article VI recognizes the

State's authority over local government: "charter cities … shall have all the powers which the

general assembly of the State of Missouri has authority to confer upon any city…" and also that

the City of St. Louis is "subject to changes and amendments provided by the constitution or by

law." And the MSD Plan itself identifies MSD as "a body corporate, a municipal corporation,

and a political subdivision of the state." MSD Plan, section 1.010. So, when the voters of the

City and the County adopted MSD's plan as the "organic law of the territory," they adopted the

Plan within this "local government" constitutional context which is still subordinate to state law

and state statutes.

In the same case in which this Court found MSD had the power to impose liens by

ordinance, we also recognized that MSD's lien ordinance is subject to Missouri statutes. *See St.*

*Louis Inv. Properties, Inc*, 873 S.W.2d at 307. This Court said that section 249.255, which

became effective on May 29, 1991, "provided that if a public sewer district places a lien upon a

customer's property for unpaid sewer charges, that lien would have the same priority as state and

county taxes." *Id*. at 305. Here, MSD has relied on section 249.255 to spotlight the power of its

---

[1] In the "Message from Freeholders at Time of Proposal," the Plan noted that sanitary and storm sewers lacked the capacity to handle the load. Disposal of sanitary sewage was limited, causing the presence of disease communicating insects and microbes. *See* MSD Plan, pg (i).

Ordinance, but section 249.255 does not aid MSD because it illustrates that its Ordinance is not of a constitutional nature but is subject to state law. In fact, both section 249.255 and section 92.835.2 touch on the same issue – the priority of liens – and both subject MSD's lien to state law and in this case to extinguishment.

Our holding is bolstered by the specific language in the Plan that gives MSD the power to impose liens. MSD has the power to "adopt and promulgate all *ordinances* … necessary, beneficial, or expedient to regulate the use, operation, and maintenance of property and facilities under its control." (emphasis added). The only constitutional authority MSD has to impose liens is the power to promulgate an ordinance to do so. And, like any municipal ordinance that conflicts with state law, state law wins. *See City of St. Peters*, 466 S.W.3d at 543 ("When the ordinance conflicts with a statute, the ordinance is void.")

*MSD Waived its Procedural Arguments*

MSD alleges the only proper vehicle to challenge its lien for unpaid sewer charges is the procedure set out in MSD's Plan. MSD waived this argument by not raising it in the trial court.

Rule 74.04 dictates a specific format for a summary judgment motion and response in order to clarify the areas of dispute and eliminate the need for the trial or appellate court to sift through the record to identify factual disputes. *Lackey v. Iberia R-V School District*, 487 S.W.3d 57, 61 (Mo. App. S.D. 2016). "When determining whether summary judgment is appropriate, a court can only consider the summary judgment record created pursuant to Rule 74.04(c)." *Montgomery v. Coreslab Structures (Missouri), Inc.*, 697 S.W.3d 766, 772 (Mo. App. W.D. 2024). "The response [to the movant's statement of uncontroverted material facts] shall support each denial with specific references to the discovery, exhibits, or affidavits that

9

demonstrate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Cox v. Callaway Cnty. Sheriff's Dep't*, 663 S.W.3d 842, 847 (Mo. App. W.D. 2023)).

This summary judgment record is devoid of any dispute regarding whether Tabernacle followed the proper administrative procedure and MSD's procedural arguments are waived.[2] Regardless, the MSD review procedure deadlines lapsed over a decade ago and concern a previous owner of the property who is not before the Court. Moreover, those procedures are not relevant here because they address, as we understand it, issues concerning the validity of the delinquent bills and therefore the validity of the lien under MSD's ordinance. The MLRL extinguishes all liens (except IRS liens) regardless of whether they are valid or not.

## Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Tabernacle.

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.

---

[2] MSD is incorrect in suggesting its administrative procedure arguments affected the trial court's subject matter jurisdiction. An action to quiet title is a civil case that circuit courts have original jurisdiction over. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). Further, "The circuit court's statutory or common law authority to grant relief in a particular case differs from the circuit court's constitutionally granted subject matter and personal jurisdiction." *Ball v. Ball*, 638 S.W.3d 543, 550 (Mo. App. E.D. 2021).