Clara B. SKAGGS, Respondent,

v.

Joe David DIAL, et al., Appellants.

No. WD 46691.

Missouri Court of Appeals,
Western District.

Sept. 14, 1993.

Lawrence R. Magee, Hines & Magee, Kansas City, for appellants.

Michael D. Hufft, Merrick, Baker, Fox, Hufft & Strauss, P.C., Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

This appeal concerns an action seeking specific performance of an oral contract to purchase residential real estate. Joe David Dial and Sharon Lorraine Dial, husband and wife, appeal from the trial court's judgment vesting fee simple title to the real estate at issue in Clara B. Skaggs. This suit originated in a seven count petition. In Counts I, II and III against the Dials, Skaggs requested the court to quiet title in her favor, grant a declaratory judgment and decree specific performance, respectively. Skaggs requested recovery against the Dials and Audra Jo Stith[1] in Counts IV, V, VI and VII for ejectment, slander of title, conversion of chattels and trespass to realty, respectively. The trial court ordered that the oral contract be specifically performed and that the Dials, after satisfying all liens on the property, execute a deed conveying the property to Skaggs so that Skaggs is vested with fee simple title to the property. The trial court found the Dials and Stith guilty of ejectment, conversion and trespass, for which the court awarded damages in the amount of $8,700.00 and punitive damages in the amount of $20.00. The trial court also awarded Skaggs $400.00 a month, the monthly rental value of the property, until she is restored to possession of the property, and $4,500.00 for attorney's fees.

The Dials raise two points on appeal arguing that the trial court erred in: 1) denying their motion for a directed finding because the Statute of Frauds applied; and 2) finding that there was a contract to sell because the

---

1. In addition to the Dials, Audra Jo Stith, the Dials' daughter, was also named as a defendant in the petition, as was Jere Loyd, the Dials' bankruptcy trustee.

terms of the oral agreement were not clear, explicit and definite. The judgment is affirmed.

At issue in the instant case is title to the residence and lot located at 1018 N.E. 44th Terrace (the property) in Kansas City, Clay County, Missouri. In July of 1969, Skaggs entered into an oral agreement with the Dials to purchase the property. Skaggs had known the Dials for a number of years because Skagg's brother was Sharon Dial's stepfather. Skaggs orally agreed to pay the Dials $1,000.00 as a down payment for the equity in the property and to, thereafter, make payments to pay off the $11,650.00 mortgage. Title to the property remained in the Dials' name even after Skaggs agreed to purchase the property so that the financing could continue through a GI loan. Sharon Dial told Skaggs that if the property was placed in Skaggs' name, the mortgage payments would be higher.

Skaggs began residing on the property shortly after she agreed to purchase it. Skaggs made mortgage payments on the property from 1969 through 1988.[2] Exhibits admitted at trial indicated that the checks for the mortgage payments were made out to the mortgage company, not to the Dials. The exhibits also showed that correspondence from the mortgage company, as well as annual statements, payment books, and interest statements for income tax purposes, were addressed to Joe Dial in care of Skaggs at the street address of the property. Skaggs paid the taxes and maintained insurance on the property. Skaggs also paid all bills associated with the property and the utilities were in her name.

Skaggs introduced evidence at trial that, since 1969, she had paid for $11,000.00 of improvements to the property. The improvements made by Skaggs to the house included the addition of aluminum siding, a porch, a shower, and a new roof, the installation of carpet, paneling and kitchen cabinets, and various plumbing improvements. Skaggs also installed a fence in the front yard and planted trees and flowers on the property.

Prior to the addition of aluminum siding to the house, Skaggs attempted to secure a bank loan to pay for the siding. The bank required proof that Skaggs was buying the house so the Dials signed a notarized statement, dated July 31, 1973, which read as follows:

This is to certify that Mrs. Clara B. Skaggs is buying our home. On July 10, 1969, we received $1000.00 as down payment on Block     , Lot 11, Kansas City North, Missouri. She has been making the house payments to Don J. Mac Murray Company, who carries the mortgage in our name until the property is paid for.

She is to make any and all improvements on this property.

On April 26, 1977, unbeknownst to Skaggs, the Dials borrowed $19,424.26 from Homemakers Financial Service. The Dials executed a deed of trust with the property serving as security for the loan. The Dials borrowed $25,000 from GECC Financial Services on July 31, 1988 and again, without Skaggs' knowledge, used the property as security for the loan.

In the winter of 1989, Skaggs allowed the Dials to move in with her because of the difficulty they encountered in traveling back and forth through the snow to the farm where they resided in Cameron, Missouri. On May 3, 1989, the Dials borrowed $66,446.43 from Ford Consumer Finance Company by placing a $66,000 mortgage on the property which also resulted in the GI loan being paid off. The Dials told Skaggs to stop making mortgage payments because the mortgage had been completely paid off. Although the Dials informed Skaggs that the mortgage was completely paid off, they did not transfer title to her.

In January of 1989, the Dials' daughter, Audra Jo Stith, also moved into the house. Although the Dials and Stith moved out sometime during 1989, they moved back in again during the winter of 1990. In early 1991, the Dials and Stith denied Skaggs access to her house after Skaggs requested that they move out of the house. Skaggs

---

2. The mortgage was transferred or assigned to several different mortgage companies during the period from 1969 to 1988 but such is not a factor relevant to the disposition of this case.

was forced to live in the garage of the house, which Skaggs had made into a small apartment prior to the time the Dials and Stith moved into the house. The Dials changed the locks on the front door and Stith nailed shut the door from the garage to the house. Without Skaggs' permission, the Dials moved Skaggs' furniture out of the house onto the back porch, cut vegetation and trees down on the property, and removed the fence in the front yard.

The Dials filed a petition for bankruptcy on July 10, 1991. Under the section of the petition titled "Schedule B—Statement of All Property of Debtor," the Dials listed their real property in Cameron, Missouri but did not list the property in Kansas City, Missouri. The exhibits at trial included an amended Schedule B–1 which listed the Kansas City property as part of the Dials' real property. The amended schedule, however, although notarized on August 9, 1991, does not indicate whether it was filed with the court because it does not bear the court's date stamp.

On September 4, 1991, Skaggs filed suit against the Dials and Stith. The trial court found for Skaggs on all the counts in Skaggs' petition except Count V, slander of title, which is not an issue in this appeal. The Dials filed a timely appeal.

Due to the similar nature of the two points the Dials raise on appeal, this court will discuss them together. The Dials argue in Point I that the trial court erred in denying their motion to dismiss [3] because the evidence established that the contract was denied and was not in writing so that application of the Statute of Frauds was required. In Point II, the Dials contend that the trial court erred in finding that a valid contract existed between Skaggs and the Dials. The Dials argue that the evidence did not clearly, explicitly and definitely establish the terms of the oral agreement.

■ In a court-tried case, this court must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court views the evidence in the light most favorable to the trial court's judgment and grants deference to the trial court's opportunity to judge the credibility of the witnesses. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.*

■ An oral agreement for the sale of real property falls squarely within the Statute of Frauds, § 432.010, RSMo 1986, and will not be enforced at law. *Straatmann v. Straatmann*, 809 S.W.2d 95, 98 (Mo.App. 1991). Equity will decree specific performance of such a contract, however, if a party has acted to such a degree upon the contract that denying the party the benefit of the agreement would be unjust. *Id.* The eight elements of proof required for specific performance of an oral contract to convey real property were originally set forth in *Walker v. Bohannan*, 243 Mo. 119, 147 S.W. 1024, 1028–29 (1912), and are as follows:

(1) The alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract as sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon

---

3. Skaggs correctly points out that the Dials incorrectly refer to the motion as a motion for a directed finding. In a court-tried case, the motion is properly designated a motion to dismiss under Rule 67.02. *Temple v. McCaughen & Burr, Inc.*, 839 S.W.2d 322, 325 n. 1 (Mo.App.1992). The name given the motion does not affect this court's review on appeal.

the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had.

■ Specific performance is granted sparingly and only when the terms of the oral agreement are proved by clear and convincing evidence. *Gegg v. Kiefer*, 655 S.W.2d 834, 837 (Mo.App.1983). The court cannot create a contract for the parties nor can the court decree specific performance if the agreement sought to be enforced is indefinite. *Quality Wig Co., Inc. v. J.C. Nichols Co.*, 728 S.W.2d 611, 617 (Mo.App.1987).

The Dials argue that Skaggs failed to prove that the oral contract for the purchase of the property was "clear, explicit and definite," which is the first element of the eight part test. The Dials argue that Skaggs failed to present evidence proving the total purchase price of the property or the period of time in which she was to complete payment. The Dials contend that Skaggs was a tenant who was using the property and paying rent for doing so.

■ The trial court found that Skaggs entered into "a clear, explicit and definite oral contract" with the Dials to purchase the property at issue in this case. The evidence, when considered in the light most favorable to the judgment, overwhelmingly supports the trial court's judgment.

Skaggs introduced evidence at trial showing that the terms of the agreement were that Skaggs would pay the Dials $1000.00 for their equity in the property and, thereafter, would make the mortgage payments directly to the mortgage company. At trial, Skaggs presented her canceled check for $1,000.00 to the Dials, on the face of which is the notation "$1000.00 Equity on 1018 E. 44 Terr. No." Skaggs also admitted into evidence receipts from the various mortgage companies that serviced the mortgage on the property from 1969 to 1988 and numerous canceled checks made out to those mortgage companies. In addition, Skaggs introduced at trial the notarized statement signed by both Sharon and Joe Dial which specifically stated that Skaggs was buying their home and set forth the payment terms of their agreement.

The deposition testimony of Joe Dial was introduced at trial and provides additional proof that Skaggs contracted with the Dials to purchase their property. Joe Dial testified as follows:

Q. You agreed to sell her the house, didn't you? Didn't you?

A. Right then I did, yeah, but it didn't work out.

Q. Well, in 1969 you agreed to sell the house to her, didn't you?

A. That's what the paper says.

Q. Well, you did, didn't you?

A. I guess so.

Joe Dial also testified that from 1969 until the Dials told Skaggs to stop making the mortgage payments because the mortgage was paid off, Skaggs made all the mortgage payments on the property, insured the property, and paid for all improvements made to the property. The responsibilities assumed by Skaggs do not support the Dials' argument that Skaggs was merely a rent-paying tenant. Paying mortgage payments directly to the mortgage company and making large-scale improvements to the property are not the usual responsibilities of a tenant. There was also testimony at trial that Skaggs paid the taxes on the property which is not generally the responsibility of a tenant.

■ The essential elements of an agreement to convey real property are: 1) the parties; 2) the subject matter; 3) the promises on both sides; 4) the price; and 5) the consideration. *Kemp Const. v. Landmark Bancshares*, 784 S.W.2d 306, 308 (Mo.App. 1990). Skaggs proved these elements by "clear, explicit, and definite" evidence. Skaggs proved that she contracted with the Dials to purchase their Kansas City property for $1,000.00 plus payment of the mortgage on the property, which at the time of the agreement was $11,650.00. Such proof establishes the essential elements of an agree-

ment to convey real property in a manner which is "clear, explicit and definite." [4]

The trial court correctly found that Skaggs proved the terms of the oral contract between Skaggs and the Dials clearly, explicitly and definitely. The trial court's judgment granting Skaggs specific performance and vesting fee simple title to the property in Skaggs is supported by substantial evidence.

The judgment is affirmed.

All concur.

---

4. The trial court specifically addressed the eight part *Walker* test and concluded that Skaggs was entitled to specific performance because the evidence established all eight elements. On appeal, the Dials argue only that Skaggs failed to satisfy the first element of the *Walker* test. The Dials do not allege that the trial court's findings as to any of the other seven elements of the test are erroneous. As a result, it is unnecessary for this court to review those findings.