**Daniel BARKHO, Respondent,**

v.

**Beth READY, Respondent,**

**Douglas Ready, Appellant.**

#### WD 79827

Missouri Court of Appeals, Western District.

OPINION FILED: March 28, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

Jonathan Sternberg, Kansas City, MO, for appellant.

Joseph Holt, Fulton, MO, for respondent Barkho.

Kristen Dickinson, Columbia, MO, for respondent Ready.

Before Division One: James Edward Welsh, P.J., Anthony Rex Gabbert, and Edard R. Ardini, Jr., JJ.

James Edward Welsh, Presiding Judge

Douglas Ready appeals the circuit court's judgment ordering specific performance of an oral contract for the purchase of land and ordering him to pay attorneys' fees on behalf of Daniel Barkho

and Beth Ready.[1] Douglas contends that the circuit court erred (1) in finding that the parties had an oral contract for the sale of property that was not barred by the statute of frauds because the evidence was insufficient to prove "by clear and convincing evidence beyond a reasonable doubt" that the parties entered an oral contract for the purchase of the land and (2) in ordering specific performance of the alleged oral contract rather than restitution. In regard to attorneys' fees, Douglas asserts that the circuit court erred in awarding Daniel and Beth attorneys' fees under the "special circumstances" or "very unusual circumstances" exception to the American Rule or abused its discretion in ordering him to pay Daniel's and Beth's attorneys' fees as a sanction under the court's inherent powers. We affirm.

In 1981, the father of Daniel and Beth purchased a farm in Callaway County, Missouri. Their father, desiring to divide up the farm property between Daniel, Beth, and his four other children,[2] drew up a plan outlining the parcels of land that each child would receive. When their father died in 2009, their mother, Alene Barkho, became the owner of the property. Because of financial difficulties in making the payments on the property, Alene, in 2011, approached all of her children about their interest in purchasing the parcels of land that their father desired each child to have. At that time, Daniel could not obtain financing to purchase his designated parcel, Tract V.

On May 29, 2011, Beth and her husband, Douglas, purchased property from Alene that included Tract V. Pursuant to the terms of the contract, Beth and Douglas agreed that if they desired to sell the property within 5 years of the date they purchased it, they would notify all of Beth's siblings. The contract stated:

> Any of the said siblings of the Buyer who offer to purchase the property shall be entitled to purchase said property for a price equal to the cost paid by Buyer under this contract, together with the actual costs of any improvements placed upon the property by the Buyer from the date of the acquisition of title by the Buyer.

The contract also provided: "With regard to Tract V, if Buyer offers same for sale, then Seller's child, Daniel M. Barkho shall have the right to refuse to purchase the property over any and all other siblings. Should he reject the right to purchase, then that right passes to the remaining siblings, equally." According to Daniel, he informed his siblings by word of mouth that it was his intent to purchase Tract V.

Thereafter, in 2011, according to Beth, Douglas encouraged Daniel to go to bank in Callaway County to obtain a loan. Beth and Daniel went to the bank, but the bank denied the loan. In 2012, Daniel sought advice[3] from Douglas about a lending company based in Oklahoma. According to Daniel, he and Douglas had a discussion about the land and about it being transferred to Daniel. Daniel said that Douglas did not give him a figure in writing about the price of the land, but they discussed it verbally. In July 2012, Douglas computed figures for Tract V with the improvements

---

1. Given that some of the parties have the same last name, we will refer to the parties by their first names going forward. No disrespect is intended.

2. George W. Barkho, Helen Herigon, Maria Brondel, and Tom Barkho are siblings of Daniel and Beth. They were parties to the lawsuit but asserted no claims.

3. Douglas had a real estate license for 20 years and had two to three years of experience as a loan officer.

on the land so that Daniel could inquire about a loan for the land.

In January 2013, Daniel spoke to his boss about possibly borrowing money from him to purchase the land. When Daniel's boss agreed to loan him $45,000, Daniel contacted Douglas and Beth and inquired about the purchase price of Tract V. Daniel said it was his understanding that he would pay $400 per acre plus the cost of any improvements on the land. On January 22, 2013, Douglas did a handwritten calculation of the purchase price of Tract V with improvements on the land at $45,728.89 "as of 1/22/13." Beth emailed this figure to Daniel on January 27, 2013. Beth also emailed Daniel handwritten calculations from Douglas showing the figures "as of 7/30." Daniel said that he understood that the $45,728.89 figure was the purchase price for the property, and Beth agreed that she and Douglas were willing to sell the land for that price.

Between January and February 2013, Daniel and Douglas talked on the telephone about Daniel sending $45,000 and paying the remaining balance of $728.89 at a later time. According to Daniel, Douglas was fine with that arrangement. Daniel, however, waited until he received his $1,000 tax return so that he could add that to the $45,000 he received from his boss as a loan. On March 11, 2013, Daniel's bank issued a cashier's check payable to "Doug or Beth Ready" in the amount of $46,000, and the check was signed by Daniel's wife. When the check was mailed to Douglas and Beth, Douglas retrieved the check from their mailbox and put it "on the counter." A couple of days later, Beth asked Douglas where to deposit the check, and Douglas told her to deposit it in Maries County Bank. Thereafter, Beth mailed the cashier's check to Maries County Bank with a note to "Please deposit this on our loan account."

When the bank received the check, it initially applied the check towards the principal on Douglas's and Beth's land loan. On April 10, 2013, Douglas contacted Maries County Bank and asked the bank to reallocate the $46,000 on their land loan. In particular, Douglas instructed the bank to apply $11,201.79 for the regular payment and to apply the remainder ($34,798.21) towards the principal. Douglas never asked the bank to return the $46,000 to him. On April 12, 2013, Maries County Bank, acting on directives from Douglas, reversed the $46,000 principal payment and re-applied the payment as $11,201.79 for a regular payment (consisting of $3,099.44 as principal and $8,192.35 as interest) and $34,798.21 applied to principal.

On April 22, 2013, Douglas texted Daniel and told him that he would call the title company "tomorrow." Douglas also sent an email to Beth on that same day saying that he was "going to set the transfer of the land to Danny" on May 1, 2013. On April 23, 2013, Douglas contacted Boyd & Boyd, Inc., a land title company, regarding the sale of Tract V. Douglas requested that Boyd & Boyd issue a title insurance owner's policy in the amount of $31,692, with a cash lender and counter closing. According to Julia Uhls, the owner of Boyd & Boyd, the date of May 1, 2013, "was chosen" as the closing date "because they wanted to do it as soon as possible and that was about the soonest Boyd & Boyd could deliver." Douglas also requested that Boyd and Boyd prepare a warranty deed to transfer the property. On April 28, 2013, Douglas texted Daniel and said, "They are supposed to call u on how the names supposed to be on title." Boyd & Boyd did contact Daniel about the name to put on the warranty deed, and Daniel instructed them to put it in his name only. On April 30, 2013, Douglas texted Daniel and said,

"They only have your name on warranty deed. Is that the way u want it."

Douglas instructed Boyd & Boyd to contact Beth when the warranty deed and title insurance policy were ready to be picked up. Boyd & Boyd prepared a title insurance owner's policy in the amount of $31,692[4] for Tract V with the insured listed as Daniel and stating that title in the land was vested in Douglas and Beth. Boyd & Boyd also prepared a warranty deed and a billing statement for $228. The billing statement listed the customer as "Douglas Ready–Daniel L. Barkho." Beth picked up these documents from Boyd & Boyd, and Douglas admits he saw at least the warranty deed prepared by Boyd & Boyd.

After a 23 year marriage, Beth Ready filed a dissolution of marriage action against Douglas on May 1, 2013. According to Beth, when Douglas became aware that she wanted a divorce, Douglas tried to get her to sign an agreement where, if she agreed to not divorce him, he would transfer the property to Daniel, but, if she went through with the divorce, Douglas would allow her to have Daniel's property and Douglas would get "all of the [remaining] property." In an email, Douglas told Beth: "The only way Danny doesn't get the land is if you don't sign it.... If you don't sign, then I guess you can explain it to Danny." Beth did not sign the agreement. Beth, however, has always been willing to sign the deed to transfer the property to Daniel, but Douglas has refused to sign the deed.

On May 6, 2013, Daniel's attorney sent Douglas a demand letter to sign the warranty deed or return the money. Douglas did neither of these things. Thereafter, on June 18, 2013, Daniel filed a petition with the circuit court seeking specific performance of the contract with Douglas and Beth to convey the property. On January 7, 2016, the circuit court ordered Douglas and Beth to deposit $46,000 to the Registry of the Court. Daniel filed a fifth amended petition for specific performance, for damages and attorney's fees, and to quiet title on January 7, 2016. On January 12, 2016, Douglas filed an answer denying the existence of any oral contract and seeking a judgment in his favor. He also stated as affirmative defenses that Daniel had no right to specific performance because the alleged oral contract was barred by the statute of frauds and Daniel could not show that he did not have an adequate remedy at law. On January 20, 2016, Beth filed an answer joining in Daniel's claim for specific performance and filed a cross-claim against Douglas for specific performance. She also requested that Douglas pay her attorney's fees.

After a bench trial, the circuit court entered its judgment finding that the parties' actions formed an oral contract for the sale of the property and ordered specific performance of the contract. The court found that there was a meeting of the minds in that:

> [Daniel] and Douglas discussed the sale of the real estate via text messages..... Douglas computed the figures for the sale on different documents at different times, including taxes, fencing, survey, and interest .... Douglas sent to ... Beth a signed e-mail that closing would occur on May 1, 2013 .... [Daniel's] actions and Douglas's actions clearly evidence a contract to convey Tract V to [Daniel.]

---

4. The amount of $31,692 was calculated by multiplying the number of acres for Tract V, which was 79.23 acres, by $400, which was the price per acre that Douglas and Beth paid for the property.

In making that determination, the circuit court stated that, "other than the evidentiary matters that Douglas committed to writing, e.g. texts, emails, etc., prior to the time of the filing of the litigation, the testimony of Douglas post filing of litigation, e.g. pleadings, deposition, testimony of trial, etc., denying the efficacy of his writings was without a scintilla of credibility." The circuit court held that the statute of frauds was not applicable because Daniel fully performed his obligations by paying the purchase price. The circuit court also ordered that Douglas pay Daniel's and Beth's attorneys' fees. In ordering the payment of attorneys' fees, the circuit court mentioned case law on the court's inherent power to sanction a party for bad faith, false pleadings or affidavits, or perjury, the existence of "exceptional" or "unusual" circumstances in a suit in equity, and special circumstances justifying attorneys' fees. Without making any findings on the basis that it chose, the circuit court ordered Douglas to pay Daniel $19,785 in attorney's fees and Beth $23,081.61 in attorney's fees. Douglas appeals from the circuit court's judgment.

 On review of a court-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view "the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). *Id.* We "accept as true the evidence and inferences ... favorable to the trial court's decree and disregard all contrary evidence." *Id.* (citation and internal quotation marks omitted). We also recognize that "[c]ircuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* "The same standard of review applies in all types of court-tried cases regardless of the burden of proof at trial." *Id.* at 199.

In his first point on appeal, Douglas asserts that the circuit court erred in finding that the parties had an oral contract for the sale of property that was not barred by the statute of frauds. In particular, Douglas asserts that the evidence was insufficient to prove "by clear and convincing evidence beyond a reasonable doubt" that the parties entered an oral contract for the purchase of the land. Douglas asserts that no evidence existed of any actual promise to sell or purchase the property, of any firm agreement as to the purchase price, of any set closing date, of the type of deed to be delivered at closing, or of the allocation of insurance and the tax liabilities.

 The statute of frauds, set forth in section 432.010, RSMo, 2000, provides:

No action shall be brought ... to charge any person upon any agreement made ... upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith[.]

"An oral agreement for the sale of real property falls squarely within the Statute of Frauds ... and will not be enforced at law." *Skaggs v. Dial*, 861 S.W.2d 188, 191 (Mo. App. 1993). Equity, however, will provide specific performance of an oral contract to convey land upon clear and convincing proof of the existence of contract, "if a party has acted to such a degree upon the contract that denying the party the benefit of the agreement would be unjust." *Id.* at 191–92. Specific performance, however, "is granted sparingly and only when

the terms of the oral agreement are proved by clear and convincing evidence." *Id.* at 192. "The essential elements of an agreement to convey real property are: 1) the parties; 2) the subject matter; 3) the promises on both sides; 4) the price; and 5) the consideration." *Id.* Moreover, "[t]he statute of frauds is not applicable to contracts which have been fully performed by one of the parties." *Lederle v. Lederle*, 916 S.W.2d 423, 429 (Mo. App. 1996).

In this case, all of the essential elements for a contract to convey the property were met in this case. The evidence established that Daniel, Beth, and Douglas discussed the sale of Tract V. Daniel inquired about the purchase price of the land, and Douglas personally computed the purchase price of the land, and the price was conveyed to Daniel. Daniel paid the purchase price of the land by sending a cashier's check to Beth and Douglas. Beth and Douglas deposited that check into their bank, and Douglas specifically directed the bank how to allocate that money to their land loan. Douglas then ordered title insurance and a warranty deed for closing on May 1, 2013. Such evidence is more than sufficient to prove both the content of the contract and the fact that Daniel fully performed under the terms of the contract. The contract was proven "by evidence so unquestionable in its character, so clear, cogent, and convincing that no reasonable doubt can be entertained of its truth; that no doubt can linger either as to the existence of the contract or the certainty of its terms, or that [Daniel] has wholly performed his part." *Russell v. Sharp*, 192 Mo. 270, 91 S.W. 134, 138 (1905). The circuit court, therefore, did not err in finding that the parties had an oral contract for the sale of property that was not barred by the statute of frauds.

In his second point relied on, Douglas asserts that the circuit court erred in ordering specific performance of the oral contract to convey the property rather than restitution. Douglas contends that, when an oral contract for the sale of land otherwise barred by the statute of frauds is enforceable under the statute's equitable exception for partial performance, the equitable remedy of specific performance is available only where the legal remedy of restitution is inadequate. Douglas argues that, where the only performance is payment of monetary consideration, restitution is always an adequate remedy. We disagree.

Douglas fails to appreciate and recognize the distinction between a situation where one party has fully performed its obligations under a contract and the situation where one has partially performed under a contract. The circuit court specifically found that Daniel paid the purchase price set by Douglas and concluded that Daniel fully performed his obligations under the oral contract. Indeed, the evidence established that Daniel paid Douglas and Beth $46,000 and that Douglas and Beth retained that money. No evidence was presented that the purchased price exceeded that sum or that Daniel promised some additional action that he did not do. As we previously noted, "[t]he statute of frauds is not applicable to contracts which have been fully performed by one of the parties." *Lederle*, 916 S.W.2d at 429.

Douglas also fails to appreciate that "[e]very tract of land is recognized as having a unique value," and because each parcel of land is unique; "specific performance is ordinarily an appropriate remedy for breach of a contract to sell land." *Kay v. Vatterott*, 657 S.W.2d 80, 82 (Mo. App. 1983). "[I]t has been held time and again that a tract of land is unique, entitling a purchaser to specific performance of a contract for its purchase, irrespective of special facts showing inadequacy of the pur-

chaser's legal remedy." *Nickels v. Cohn*, 764 S.W.2d 124, 136 (Mo. App. 1989) (citing *Wilkinson v. Vaughn*, 419 S.W.2d 1, 5 (Mo. 1967)). The circuit court, therefore, did not err in in ordering specific performance of the oral contract to convey the land to Daniel.

▮ In his third and fourth points relied on, Douglas complains about the circuit court's judgment ordering him to pay Daniel's and Beth's attorneys' fees. Douglas asserts that the circuit court erred in awarding Daniel and Beth attorneys' fees under the "special circumstances" or "very unusual circumstances" exception to the American Rule or abused its discretion in ordering him to pay Daniel's and Beth's attorneys' fees as a sanction under the court's inherent powers.

▮ "The determination of attorney fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration." *Trimble v. Pracna*, 167 S.W.3d 706, 714 (Mo. banc 2005). "Whether a trial court has authority to award attorneys' fees is a question of law which we review *de novo.*" *St. Louis Title, LLC v. Talent Plus Consultants, LLC*, 414 S.W.3d 24, 26 (Mo. App. 2013).

"Generally, with regard to awards of attorney's fees and costs, Missouri courts adhere to the 'American Rule,' which provides that each litigant should bear his or her own expenses." *Hinton v. Dir. of Revenue*, 21 S.W.3d 109, 112 (Mo. App. 2000). Exceptions, however, are made where fees are permitted by statute or by contract, where unusual circumstances exist such that equity demands a balance of benefits, where the fees result from certain collateral litigation, or where special circumstances exist. *St. Louis Title*, 414 S.W.3d at 26.

At trial, the circuit court stated on the record:

> [I]t is my belief at this point, having listened to the evidence, that [Douglas] is a bad actor in this case and there is a few ways that I can reach bad actors— one of them is via attorney's fees, and one of them is via punitive damages— because he took the money and ran and he took the land and ran. And so he's hard-pressed to come into the courtroom and expect to pluck anybody's heartstrings that he didn't understand what he was putting on paper. I don't buy it at all. I don't buy all of his arguments with regard to those weren't his emails—or, excuse me, texts. I don't believe it. He sat here for forty-five minutes and I've observed him, and that's where I am with regard to it.

Further, in its findings of fact and conclusions of law, the circuit court specifically found:

> The Court finds that other than the evidentiary matters that Douglas committed to writing e.g. texts, emails etc., prior to the time of the filing of the litigation, the testimony of Douglas post filing of litigation e.g. pleadings, deposition, testimony at trial, etc., denying the efficacy of his writings was without a scintilla of credibility. It appeared to the Court that Douglas was driven by his desire to reconcile with Beth (even if that meant using the sale of the real estate as a leverage tool against her and/or her brother to achieve reconciliation) and that he intentionally used the sales proceeds to his financial advantage, refused to transfer Tract V and refused to return the sales proceeds (until ordered by this Court to do so). Such actions were reckless, willful, and malicious.

On "rare occasions in an equity action," the circuit court may award attorneys' fees when it "finds it's necessary to award the fees in order to balance the benefits." *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 806 (Mo. App. 1984). "Fees may be awarded in equity actions but only in exceptional circumstances." *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 131 (Mo. App. 1991). "'Unusual circumstances' have been found where a party's conduct is 'frivolous, without substantial legal grounds, reckless or punitive.'" *Birdsong v. Children's Div., Mo. Dep't of Social Servs.*, 461 S.W.3d 454, 460 (Mo. App. 2015). Although courts have rarely found the very unusual circumstances that permit the award of attorneys' fees in the absence of a statute or contract," *id.* at 460–61, it is still within the circuit court's discretion to award attorneys' fees when unusual or exceptional circumstances exist. Given that the circuit court found and the evidence supported that Douglas's actions were reckless, willful, and malicious, we conclude that the circuit court did not abuse its discretion in ordering Douglas to pay Daniel $19,785 in attorney's fees and Beth $23,081.61 in attorney's fees.[5]

Daniel and Beth also filed motions for attorneys' fees on appeal with this court. Under this court's Special Rule XXIX, "a party may file a motion in this court for attorney fees 'pursuant to contract, statute, or otherwise.'" *Motor Control Specialties, Inc. v. Labor and Indus. Relations Comm'n*, 323 S.W.3d 843, 857 (Mo. App. 2010); *Lake at Twelve Oaks Home Ass'n, Inc. v. Hausman*, 488 S.W.3d 190, 202 (Mo. App. 2016). Daniel and Beth cite to no contract or statute that gives them the right to attorneys' fees on appeal;

thus, we presume that they are making their request for attorneys' fees based on an "otherwise" situation. Their motions essentially suggest that because the circuit court found Douglas's actions at the trial level to be reckless, willful, malicious, and in bad faith, we must necessarily find that his actions on appeal are reckless, willful, malicious, and in bad faith. We decline to make such assumptions in regard to Douglas's actions on appeal. Therefore, although we are affirming the circuit court's award of attorney's fees at trial level, we find that Daniel and Beth have not "otherwise" established that they are entitled to attorneys' fees on appeal.

We affirm the circuit court's judgment ordering specific performance of an oral contract for the purchase of land and ordering Douglas to pay attorneys' fees on behalf of Daniel and Beth.

All concur.

---

5. Given that we reached this conclusion, we need not address Douglas's contention that the circuit court abused its discretion in ordering him to pay Daniel's and Beth's attorneys' fees as a sanction under the court's inherent powers.