

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE ESTATE OF LAWRENCE DAVID ) 
SCHNEIDER, Incapacitated/Disabled )
  )
CAROL HINCHIE, )
  )
                Respondent, )   **WD81524**
  )
v. )   **OPINION FILED:**
  )   **March 26, 2019**
  )
ROBERT SCHNEIDER, )
  )
                Appellant. )

**Appeal from the Circuit Court of Callaway County, Missouri
The Honorable Deborah Daniels, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Anthony Rex Gabbert, Judges

Mr. Robert Schneider ("Robert")[1] appeals from the ruling of the Circuit Court of Callaway County, Missouri, Probate Division ("probate court"), removing him as conservator and guardian of Mr. Lawrence David Schneider ("Larry") and granting Ms. Carol Hinchie's ("Carol") petition to be appointed successor conservator and guardian. We affirm.

---

[1] Several people involved in this case share the same surname, so we refer to them by their first names to avoid confusion. No undue familiarity or disrespect is intended.

## Factual and Procedural Background[2]

Larry is a mentally disabled adult. Larry lived with his parents, Robert and Martha Schneider, who had been appointed his co-guardians and co-conservators. After Martha's death on May 8, 2015, Robert was Larry's primary caregiver and served as Larry's sole guardian and conservator. Larry received personal assistant services through Finck Supported Living and case management services through Callaway County Social Services. Carol, who is Robert's daughter and Larry's adult sister, also helped with Larry. The family plan was that Carol would become more involved with Larry's care as her parents got older, and when they both died, she would care for Larry.

At an annual meeting held in February 2016 to update and develop the next year's individual support plan for Larry, Larry's support coordinator/case manager with Callaway County Special Services noted that Larry was very close to his sister Carol and his entire family, he attended church each Sunday with family, family members were the most important individuals in his life, and it was important that Larry's daily routine remain as consistent as possible.

In the summer of 2016, Robert met Ms. Mary Gallagher ("Mary") through a dating website. Carol and her brother Mr. Steven Schneider ("Steve") were concerned about the relationship because Mary represented herself on the website to be a widow when she was actually married. They were also concerned about Mary's ability to manage finances since she had filed for bankruptcy the same year she met Robert. Despite Carol and Steve's concerns, Robert had Mary and Kevin, her fourteen-year-old son, move into his home in December 2016. About that time, he also requested that Callaway County Special Services involve Mary in

---

[2] In the appeal of a court-tried case, we view the evidence in the light most favorable to the circuit court's judgment, accepting as true the evidence and inferences favorable to the judgment and disregarding all contrary evidence. *Barkho v. Ready*, 523 S.W.3d 37, 43 (Mo. App. W.D. 2017).

decision-making for Larry and stated that he and Mary were going to "train" Larry in the home. Also in December 2016, Robert and Mary traveled out-of-state and left Larry in the care of Kevin overnight. When Carol came to the farm the next morning and found Larry had been alone overnight with Kevin, she reported the incident to Callaway County Special Services. Carol and Steve were concerned about Larry's safety in the care of a fourteen-year-old boy.

In January 2017, Finck Supported Living contacted Callaway County Special Services to report that the personal assistant staff was concerned that when their shift was over, Larry was left at home with fourteen-year-old Kevin, who would play with technology in his room and not monitor Larry. There was also a report that the personal attendant found a broken glass at the end of the stairway, which could have harmed Larry, while Kevin was in his room with the door shut. Larry's support coordinator/case manager with Callaway County Special Services expressed to Robert that it was not a good idea for Larry to be left alone with Kevin, but Robert stated that he was fine with it.

Robert and Mary were married on February 25, 2017, and two days later, Robert added Mary as joint tenant with right of survivorship to his personal checking account, into which he regularly deposited funds from Larry's conservatorship account, commingling the funds without having sought court approval. Within a week of the marriage, Robert retitled his farm jointly with Mary. On March 1, 2017, Robert filed a letter with the probate court requesting that Carol be removed as Larry's successor guardian and that Mary be appointed.

After Robert's marriage, he made major changes in Larry's life. Robert took Larry off all behavioral health medicines without consulting with a physician. Robert revoked Callaway County Special Services' authorization to release information to Carol and Steve. He curtailed Carol's visits with Larry. Robert changed Larry's doctor, his case manager, discontinued his

3

personal assistant services, and stopped attending St. Peter's Catholic Church where the family had worshipped every Sunday. Larry's personal assistant and case manager were concerned about the effect these changes had on Larry, including increased anxiety, weight loss, and regression in skills.

On March 13, 2017, Carol petitioned the probate court pursuant to section 475.097[3] to appoint a guardian ad litem for the limited purpose of investigating Robert's guardianship and conservatorship of Larry. At the same time, Carol also filed a motion to remove Robert as Larry's guardian and conservator pursuant to section 475.082.5. Robert moved to dismiss Carol's motion for removal on the grounds that she lacked standing to pursue the motion to remove. On April 12, 2017, the probate court held a hearing to address *only* the petition for appointment of a guardian ad litem. Neither Carol's motion to remove nor Robert's motion to dismiss was noticed up, considered, or ruled upon by the probate court. After hearing testimony from Carol and Robert, the probate court declined to appoint Carol as guardian ad litem and conservator ad litem and, instead, determined that the court "need[ed] to appoint an attorney to file a report to the Court about how Larry is getting along and what needs to be done with regard to his financial concerns." [Tr. 72]

After the probate court appointed Ms. Cynthia Kramer as attorney and guardian ad litem ("the GAL") for Larry, the GAL reported on her investigations. Her first report was filed May 31, 2017. She reported that "[t]he conservator, Robert Schneider, Larry's father, currently transfers the entire amount of Larry's social security benefit," as well as the income Larry earned by working at a sheltered workshop, into Robert's joint checking account with Mary. The GAL determined that "[t]he co-mingling of Larry's funds with those of the conservator, and especially now in an account that can be accessed by an individual who is not a court[-]appointed

---

[3] All statutory references are to the REVISED STATUTES OF MISSOURI 2016.

conservator is concerning and warrants further investigation." The GAL also reported that "[t]he expenses being allocated to Larry do not appear to be substantiated with any type of source documentation." The GAL concluded:

> [T]here are significant concerns about Robert's decision-making in regard to allowing access to decisions about Larry's funds and well-being to his new wife, to whom he has only been married a few months and known for a year or less. Another concern regarding appropriate decision-making includes leaving Larry for supervision by a 14 year old boy, who barely knows Larry. In addition, there are concerns due to Larry being removed from contact with his familiar relationships, such as St. Peters, his sister and her family, his [a]unt, and his brother.

On October 11, 2017, the GAL submitted her final report and recommendation to the probate court. With regard to Robert's management of Larry's benefits, the GAL found Robert:

> appears to have ceased co-mingling of Larry's funds; has removed access to the account from any other person than himself; has recently started to make direct purchases on behalf of Larry from Larry's account; that substantiation of expenses such as room and board have still not occurred; that compliance with accounting requirements for allocation of expenses has still not occurred; and that [Robert] appears to be having difficulty understanding the need for proper accounting and allocation of Larry's funds.

With regard to Robert's management of Larry's medical condition, the GAL found that:

> Larry has experienced multiple medical concerns during the two years following the death of his mother; that Larry has exhibited symptoms of an underlying medical or psychological change during the two years following the death of his mother; and that [Robert] has raised these concerns with physicians but has not consistently followed up on screenings or treatment for these conditions.

With regard to the least restrictive environment provided by Robert for Larry, the GAL found that:

> Larry's 50 year pattern of activities has been completely changed in the past 9 months; that Larry's support team of familiar individuals has been completely changed in the past 9 months, including changing medical professionals, restricting the access of Larry to close family members such as Carol and Steve, and introducing numerous and continuous additional activities that keep Larry out of the home and away from his familiar routine; that the family environment for Larry has changed substantially in the past 9 months by the introduction of

[Robert]'s new wife Mary and her 14 year old son to the family home; and that no substantiation as to how these changes support Larry's rights to autonomy and self-determination has been provided but instead the reason given for these changes by [Robert] are related to his relationship with his new wife.

The GAL recommended that Robert and Carol be named as co-guardians of Larry, "with full knowledge that [Robert] has stated unequivocally that he will not speak with Carol and that he would rather see Larry placed in a 'State' home than be placed with Carol due to her rejection of his new wife." However, the GAL secondarily recommended that, if Robert cannot put aside his past animosity with Carol, Carol be named guardian for Larry.

The probate court held a status hearing on October 12, 2017. The probate court, "on its own motion, determine[d] that there [was] reason to believe that the court-appointed conservator [was] not performing the duties required of a conservator under Section 475.097 based on the [GAL] report filed on 10/11," [Tr. 90] and on Robert's disregard after the April hearing of the directions from the probate court concerning the management of Larry's finances. The probate court further determined "that an emergency exist[ed] because of the jeopardy that this conduct may create for the continued receipt of federal and state benefits." [Tr. 92] The probate court appointed Carol as emergency conservator ad litem to have control of and manage Larry's finances. A hearing on Carol's petition to be appointed successor guardian and conservator was set for November 9, 2017.

At the November 9th hearing, Carol, Steve, Larry's Callaway County Special Services case manager, and the Finck Supported Living manager testified that Robert had failed to act in Larry's best interests. The Finck Supported Living manager was concerned primarily about Larry being at home alone with Mary's fourteen-year-old son when the personal assistant left for the day and about Robert not considering that an issue. Larry's Callaway County Special Services case manager also expressed concerns for Larry's safety when he was at home alone

6

with Kevin. She also testified that there were reports that Larry had untreated medical conditions in December 2016; that Robert had taken Larry off all of his behavioral health medications; and that Robert and Mary were establishing new goals for Larry that Finck thought were too advanced for him. In January 2017, Robert revoked his authorization to release information to Carol and Steve. Larry's case manager also noted reports of concern expressed by the Finck Supported Living manager regarding Larry's noncompliance, regression in skills, and enhanced anxiety and confusion.

Robert blamed the GAL and others for his failure to comply with the probate court's directives regarding Larry's finances. He did not see anything wrong with leaving Larry, who has the mental cognition of a three- to four-year-old, with a fourteen-year-old boy ("What's wrong with 14?"). And he did not want Carol or Steve to receive any information about Larry, not because of Larry, but because of the way they were treating him (Robert) and Mary. Robert testified that he did not want to work with Carol as co-guardian and co-conservator.

On November 14, 2017, the GAL filed a supplement to her attorney and guardian ad litem final report.

Regarding conservatorship and management of benefits, the GAL noted that Robert's annual report as conservator for Larry was due on October 31, 2017, but had not been filed. She also noted that even after going to the Social Security Administration to obtain information regarding the proper accounting and expenditure for Larry's benefits, Robert remained "confused regarding Larry's status as a disabled adult rather than a child, as well as unclear regarding appropriate dispersing and accounting for Larry's funds." She also reported that Robert had not indicated any initiative in obtaining information regarding the requirements of a conservator in

7

Missouri. Consequently, ***the GAL recommended to the probate court that Robert be removed as conservator and that Carol be appointed***.

Regarding guardianship, the GAL noted that Robert's annual report as guardian was due on October 31, 2017, but had not been filed. The GAL determined that "[t]he evidence at the hearing on November 11, 2017[,] substantiated that [Robert] is struggling to separate his statutory responsibility and duties as Guardian from his role as Larry's parent and from his relationship with his new wife." Consequently, the GAL concluded that Robert was no longer able to act as the sole guardian for Larry, and recommended that Robert and Carol be named as co-guardians. Alternatively, if Robert was unable or unwilling to share guardianship with Carol, she recommended that Carol be named guardian for Larry.

On December 26, 2017, Robert and Carol both filed post-hearing statements, and the GAL filed the attorney and guardian ad litem's post-hearing supplemental statement with regard to the parties' ability to cooperate in a co-guardianship during the period November 9, 2017, through December 26, 2017. The GAL found there was substantial evidence that Robert was a loving father to Larry, but that Robert's ability to serve as conservator and guardian "had been compromised to the extent that he cannot meet the statutory obligations imposed for serving as a sole Conservator or Guardian." The GAL found there was substantial evidence that Carol "is a loving sister and that she can meet the statutory obligations imposed on a sole Conservator and Guardian for Larry and that she will also continue to attempt to maintain and facilitate Larry's relationship with his father." Due to Robert's inability to directly communicate and cooperate with Carol in a co-guardianship or co-conservator relationship, ***the GAL recommended to the probate court that Carol be designated as the guardian of and conservator for Larry***.

On December 28, 2017, the probate court determined, based on the evidence presented at the November 9, 2017 hearing and the subsequent GAL recommendations filed with the probate court, that Robert was not effectively performing his legal duties as guardian and that an emergency existed because family members were unable to communicate with each other. The probate court appointed Carol as Larry's emergency guardian and directed her to continue as emergency conservator ad litem. The probate court directed the parties to comply with a transition plan to deliver Larry and his belongings to Carol's residence. The probate court directed Carol to inform the probate court in writing if she intended to file a petition to be appointed and to consent to serve as successor guardian and conservator.

On January 1, 2018, Larry moved into Carol's residence. On January 4, 2018, Carol filed a petition for appointment of successor guardian and conservator. On January 23, 2018, the probate court held a hearing on Carol's petition. Carol and Robert both testified. Carol testified as to her qualifications to serve as guardian and conservator. Robert testified that he refused to have any direct communication with Carol and did not intend on seeing Larry again. The probate court entered its judgment permanently removing Robert as guardian and conservator and appointing Carol as his successor in both capacities.

Robert appealed from the probate court's January 23, 2018 ruling.[4]

---

[4] Robert appeals from a docket entry order filed January 23, 2018. "The requirement of Supreme Court Rule 74.01(a) that a document from which an appeal is taken must be labeled 'judgment' does not apply to appeals from probate proceedings." *In re Estate of R.M.*, 356 S.W.3d 250, 251 n.1 (Mo. App. E.D. 2011) (citing *In the Matter of Kemp v. Balboa*, 959 S.W.2d 116, 118 (Mo. App. E.D. 1997); *Brown v. Gillespie (Estate of Brown)*, 955 S.W.2d 940, 945 (Mo. App. S.D. 1997)). *Accord S.B. v. J.L. (In re J.L.B.)*, 280 S.W.3d 147, 155 n.13 (Mo. App. S.D. 2009) (explaining that although the probate court's docket sheet entry was not denominated "judgment" and was not a signed writing by the court as required by Rule 74.01(a), it was nevertheless a final judgment for purposes of appeal in that Rule 74.01(a) has been consistently held not to apply in probate proceedings). Accordingly, we have the authority to address this appeal.

**Standard of Review**

Our standard of review in the appeal of the probate division's appointment of a successor guardian and conservator of an adult is to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Scott v. Lee (In re Estate of Davis)*, 758 S.W.2d 461, 463 (Mo. App. W.D. 1988) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

**Analysis**

Robert asserts two points on appeal. In his first point, he contends that the probate court misapplied the law when it removed him as guardian and conservator because Carol lacked standing to seek his removal because she is not an "interested person" under the definition of that term in section 472.010(15). In his second point, he avers that there was insufficient evidence before the probate court to support any of the relevant statutory grounds for his removal as guardian.

**Point I – Standing**

"Because standing is a question of law, review of the issue on appeal is *de novo*." *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012).

Section 475.082.5 allows any "interested person"[5] to file a motion alleging that a guardian or conservator is not discharging his or her statutory responsibilities and duties or has not acted in the best interests of his or her ward or protectee. Upon the filing of such a motion:

---

[5] "The term 'interested person' is not defined in Chapter 475. However, [s]ection 475.020 makes the provisions of [C]hapter 472 of the probate code applicable to guardianships, 'unless therein restricted to decedents' estates.'" *Sturmfels v. Frederick (In re Estate of Sturmfels)*, 261 S.W.3d 559, 563 (Mo. App. E.D. 2008). Section 472.010(15) defines "interested persons" as follows:

> "**Interested persons**" means heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may have a property right or claim against or an interest in the estate of a protectee.

or if the probate court independently as part of its status review determines the [guardian or] conservator is not performing his [or her] duties or acting in the [ward's or] protectee's best interests, the probate court may order a hearing be held and cause the [guardian or] conservator to appear before the court.

*Sturmfels v. Frederick (In re Estate of Sturmfels)*, 261 S.W.3d 559, 563 (Mo. App. E.D. 2008) (citing § 475.082.5). "If the court subsequently finds the [guardian or] conservator is not discharging his [or her] duties and responsibilities as required, it may order the [guardian's or] conservator's removal." *Id. See also In re Estate of Phillips*, 901 S.W.2d 304, 307 (Mo. App. S.D. 1995) (where the record demonstrates that the guardian and conservator is not performing the duties required thereof, the probate court may remove the guardian and conservator on its own motion).

Here, the probate court *never* ruled upon *Carol's* motion to remove Robert as guardian and conservator; instead, the January 23, 2018 ruling accomplished two things: first, upon the recommendation *by the GAL* and the probate court's own independent review of Robert's malfeasance during the course of the proceedings, the probate court removed Robert as guardian and conservator for Larry; second, the probate court granted Carol's petition for appointment of successor conservator and guardian, thereby appointing Carol in both successor roles.[6] Accordingly, Robert's standing argument on appeal is misplaced.

---

This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved.

And, the parties to this appeal do not dispute that a ward or protectee's sibling lacks standing to seek removal of a guardian or conservator based solely on his or her "purely sentimental or filial interest" in the ward or protectee. *Hebert v. Schieber (In re Schieber)*, 289 S.W.3d 256, 259 (Mo. App. W.D. 2009) (internal quotation marks omitted). As we explain in our ruling today, however, the probate court did not base its guardianship and conservatorship removal ruling upon the request of a sibling with nothing more than "purely sentimental or filial interest" and, hence, Robert's "interested person" argument on appeal is nothing more than a red herring.

[6] In pertinent part, the January 23, 2018 order states:

Mr. Riley appears with [Carol,] the emergency [guardian and conservator] and the petitioner for appointment of a successor guardian and conservator. Ms. Eliason appears with [Robert,] the guardian and the conservator. [GAL] appears as the court[-]appointed attorney for [Larry]. . . .

11

Stated another way:

- On appeal, Robert does not challenge the probate court's independent authority in April 2017 to appoint a GAL to serve as an attorney for Larry to investigate Larry's guardianship and conservatorship by Robert as Larry's fiduciary.

- On appeal, Robert does not challenge that the GAL was authorized to make reports and recommendations to the probate court.

- On appeal, Robert does not challenge either the authority of the probate court to determine, or the probate court's conclusion, *on its own motion* in October 2017, that there was reason to believe that Robert was not performing the duties required of a conservator, nor does Robert challenge the probate court's emergency appointment of Carol as an emergency conservator for Larry at that time.

- On appeal, Robert does not dispute that the GAL recommended to the probate court that Robert be removed as both guardian and conservator and Carol be appointed as successor guardian and conservator and, notably, Robert does not challenge the GAL's standing to make these removal and replacement recommendations to the probate court.

- On appeal, Robert does not challenge that the probate court is authorized, on its own motion and upon its own independent review of the record, to remove a guardian and conservator upon its finding that the guardian and conservator is not fulfilling the statutory obligations thereof.

- Carol's January 2018 petition for appointment of successor conservator and guardian mentions nothing about seeking removal of Robert as conservator and guardian and, instead, only posits Carol's qualifications to serve as a successor guardian and conservator.

- Though the January 23, 2018 order of the probate court granted Carol's petition for appointment of successor conservator and guardian, there is nothing in the January 23, 2018 order that granted *Carol's* motion to remove Robert as conservator and guardian; instead, the January 23, 2018 order makes clear that Robert's removal as guardian and conservator is based upon the *GAL's recommendation* and the *probate court's independent determination* based upon the "course of conduct exhibited [by Robert] during these proceedings."

In summary, then, the probate court did *not* remove Robert as conservator and guardian

by way of ruling upon *Carol's* March 2017 motion to remove; rather, the probate court removed

---

[GAL] makes an oral report to the court and recommends that the court grant the petition to appoint a successor guardian and conservator. Court finds that the criteria of Section 475.110 and 473.140 have been satisfied with regard to the removal of the current fiduciary[, Robert,] because of the course of conduct exhibited during these proceedings. Court grants the application for appointment of a successor guardian and conservator under Section 475.115, RSMo.

Robert as conservator and guardian based upon the advice and recommendation of the *GAL* and *the probate court's independent review of Robert's failure to comply with his statutory obligations as conservator and guardian*. As Robert does not challenge the GAL or probate court's standing or authority to act in these proceedings on the topic of Robert's removal as guardian and conservator, his standing argument on appeal fails.

Point I is denied.

**Point II – Sufficiency of the Evidence**

In Robert's second point, he avers that the probate court's judgment removing him as guardian was not supported by substantial evidence of any of the relevant statutory grounds for removal in sections 475.082.5, 475.120, or 473.140.

"Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id*. "When reviewing whether the circuit court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations." *Id*. at 200. We accept as true the evidence and inferences favorable to the circuit court's judgment and disregard all contrary evidence. *Id*. "Circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id*.

The probate court may remove a guardian if the guardian "is not discharging his responsibilities and duties as required by this chapter, or has not acted in the best interests of his ward," § 475.082.5, or is "incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties." § 473.140. The general powers and duties of a guardian of an

incapacitated person are "to take charge of the person of the ward and to provide for the ward's care, treatment, habilitation, education, support and maintenance." § 475.120.3. "[T]he powers and duties shall include, but not be limited to, the following:

(1) Assure that the ward resides in the best and least restrictive setting reasonably available;

(2) Assure that the ward receives medical care and other services that are needed;

(3) Promote and protect the care, comfort, safety, health, and welfare of the ward;

(4) Provide required consents on behalf of the ward;

(5) To exercise all powers and discharge all duties necessary or proper to implement the provisions of this section.

*Id.*

Viewing the evidence in the light most favorable to the probate court's judgment, as our standard of review requires, the record is replete with substantial evidence of Robert failing to discharge his official duties as guardian and failing to act in Larry's best interests:

*Assure that the ward resides in the best and least restrictive setting reasonably available:*

- Robert left Larry in the care of Mary's fourteen-year-old son overnight and failed to realize that it was improper;

- Robert left Larry in the care of Mary's fourteen-year-old son when Larry's personal assistant left for the day, and Robert did not consider it an issue that Kevin played with technology in his room and did not monitor Larry;

- Robert isolated Larry from Carol and Steve because of how Robert perceived they were treating Mary and him;

- Robert stopped talking to Carol and refused to allow Carol to come to his home, not because of how Carol treated Larry but because of how Robert perceived Carol was treating Mary and him;

- Robert stopped taking Larry to the church that Larry had attended since 1978.

14

*Assure that the ward receives medical care and other services that are needed:*

- Robert changed Larry's longtime physician;

- Robert changed Larry's case manager;

- Robert discontinued Larry's personal assistant services, although Larry had benefitted from the services;

- Robert stopped giving Larry his behavioral medications without consulting a physician, which resulted in Larry exhibiting heightened anxiety;

- Robert failed to consistently follow up with physicians on screenings or treatment for Larry's medical conditions.

*Promote and protect the care, comfort, safety, health, and welfare of the ward:*

- Robert and Mary began to "train" Larry on activities of daily living that Larry's support team thought were too advanced for him;

- Robert refused to allow Carol and Steve to obtain information about Larry from caseworkers and others, not because of how they were treating Larry but because of Robert's perception of how Carol and Steve were treating Mary and him;

- Robert refused to work with Carol as co-guardians;

- Robert struggled to separate his statutory responsibility and duties as guardian from his role as Larry's parent and from his relationship with his new wife;

- Robert refused to have any direct communication with Carol after she was appointed guardian ad litem;

- Robert had no contact with Larry after Carol was appointed guardian ad litem, and he did not intend on seeing Larry again.

In addition to the foregoing, Robert failed to file his annual report as guardian that was due October 31, 2017. "A guardian's failure to submit annual status reports to the circuit court can contribute to the circuit court's finding that the guardian is neglecting his statutory responsibilities and duties." *In re Oliva v. Oliva*, 113 S.W.3d 269, 275 (Mo. App. W.D. 2003). *See also In re Estate of Pittman*, 16 S.W.3d 639, 643 (Mo. App. W.D. 2000) (same). We

15

conclude that substantial evidence supported the probate court's removal of Robert as Larry's guardian and Carol's appointment as Robert's successor.

Point II is denied.

## Conclusion

We affirm the probate court's judgment.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Anthony Rex Gabbert, Judges, concur.